U. P. R. Co. v. Mertes.

# UNION PACIFIC RAILWAY COMPANY v. JOHN PETER MERTES.

## [FILED SEPTEMBER 21, 1892.]

1. **Dismissal: NON-PAYMENT OF COSTS: RULE UNDER THE CODE.** Under the common law, where an action is dismissed for want of prosecution, at the costs of the plaintiff, the plaintiff is required to pay such costs before prosecuting a second action for the same cause. In equity procedure, however, this rule is not enforced. A court of equity will be governed by the circumstances of each case, and where there is a valid excuse given for the failure to pay the costs in the former suit, will not compel such payment as a condition of permitting the second to proceed. The equity rule prevails under the Code, and while the court will not permit vexatious litigation, it will, in a proper case, excuse the non-payment of costs in the case previously instituted.

2. **Motion to Direct Verdict.** If a party desires to submit his case to the jury on the evidence of the plaintiff, and asks an instruction that the jury find for the defendant, he should make his motion to that effect without reservation. If he does not, the court may refuse to entertain it.

3. **The questions of negligence** were properly submitted to the jury.

4. **Contributory Negligence.** Although a party may have negligently exposed himself to an injury, yet if the defendant, after discovering his exposed situation, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages.

ERROR to the district court for Douglas county. Tried below before HOPEWELL, J.

*J. M. Thurston, W. R. Kelly, E. P. Smith,* and *Schomp & Corson,* for plaintiff in error.

*H. B. Holsman,* and *Mahoney, Minahan & Smyth, contra.*

MAXWELL, CH. J.

The plaintiff below in his petition alleges, in substance, that on the 14th day of June, 1885, in Douglas county and state of Nebraska, he was injured by the defendant; that said injury was done by defendant running a locomotive engine against plaintiff, thereby fracturing four ribs and doing him other bodily injury; that on account of said injury the plaintiff is wholly and completely disabled for manual labor; that said disability is permanent; that said injury was done to the plaintiff at a point on the defendant's line of railroad in said county and state where said railroad is crossed and intersected by a public county road, or on said line of road near said crossing; that the said public road passes over the said railroad at the place where the locomotive of defendant struck and injured plaintiff; that the agents and servants of the defendant negligently and carelessly ran a locomotive engine against said plaintiff; that said injury to plaintiff was caused wholly by the negligence and carelessness of the agents and servants of the defendant in charge of said locomotive engine; that plaintiff was not guilty of contributory negligence; that the plaintiff had earned his living by manual labor; that his labor was worth the sum of five hundred and ninety-two dollars annually; that before said injury he was in good health and able to work; that the plaintiff's age at the date of the injury was about forty-nine years; and that he had an expectancy of life of $21\frac{81}{100}$ years; that on account of said injury the plaintiff has suffered much pain, and had to employ a surgeon to treat said injury, which surgical aid cost the sum of four hundred dollars. Wherefore he prayed for damage in the amount of one thousand nine hundred and ninety-nine dollars.

The defendant filed an amended answer, in which it denied that plaintiff was injured in the manner or to the extent alleged in the petition; denied that the plaintiff was

injured at the place alleged in the said petition; denied that plaintiff was injured by being struck by defendant's locomotive engine at a point on its road where it crosses a public road; denied that its agents and servants in charge of said locomotive engine were guilty of carelessness and negligence; denied that its agents negligently and carelessly ran said locomotive engine against said plaintiff; denied that plaintiff was injured in any manner, or to any extent, by reason of any fault or negligence on the part of the defendant, its servants or employes; that if plaintiff was injured as alleged in the petition, or to any extent, it was through his own fault and carelessness contributing thereto, and not through any fault or carelessness attributable to this defendant.

In an action in the United States district court then pending, wherein the plaintiff below was plaintiff and the defendant below was defendant, and wherein the same cause of action set up and recited in plaintiff's petition was then in said court pending for trial, and in which said action the said plaintiff had complained of and against said defendant of and concerning the very same alleged wrong and injury in the petition herein alleged and mentioned, the court made an order as follows:

"JOHN PETER MERTES  
     v.        &#125; Dismissal.  
UNION PACIFIC RY. CO.  

"This cause coming on for hearing upon the regular call of the docket, and the plaintiff failing to appear, upon motion of the defendant, by A. J. Poppleton, its attorney, it is ordered by the court that this cause be, and the same is hereby, dismissed, for the want of prosecution, at the cost of plaintiff, and that execution issue therefor."

That afterwards, on the 8th day of October, 1890, the plaintiff below filed a motion in the district court of Douglas county, based on the records of the proceedings in the United States circuit court, by which motion the defend-

ant prayed the court to arrest the action, and asked for judgment of nonsuit against the plaintiff on account of said judgment in the United States circuit court, and because the plaintiff had not paid said costs.   Thereupon the plaintiff offered and read in evidence, in resistance of defendant's motion, his affidavit of merits, and admitting therein that he had not paid the costs adjudged against him in the United States circuit court, and averring that he had not paid the same on account of his poverty and inability to earn anything on account of the injury set forth in the petition, and that the only thing of value that he owned was his cause of action against the company for personal injury, and that he could not obey any order requiring him to pay costs in the United States circuit court on account of his poverty."

The motion to dismiss was overruled, and this is the first error complained of.

Under the common law, where an action is dismissed without prejudice at the costs of the plaintiff, he cannot maintain a second action until he has paid the judgment for costs in the first action ( *Weston v. Withers*, 2 Term Rep. [Eng.], 511), and the plea of poverty is no excuse (Id.). The rule seems to have originated in ejectment cases, which, under the common law, could be brought without limit. In the case cited, however, the action was for unlawful distress of property, and seems to have been attended with circumstances of peculiar hardship, yet the court applied the rule in ejectment cases.

The common law rule has been recognized in many cases in this country. (*Perkins v. Hinman*, 19 Johns., 237 ; *Jackson v. Edwards*, 1 Cow. [N. Y.], 138 ; *Jackson v. Carpenter*, 3 Id., 22; *Jackson v. Schauber*, 4 Wend. [N. Y.], 216; *Kentish v. Tatham*, 6 Hill [N. Y.], 372; *Felt v. Amidon*, 48 Wis., 66.) In *Stebbins v. Grant*, 19 Johns. [N. Y.], 196, the court recognized the common law rule, but refused to apply it in suits in equity.   A court of equity will be gov-

·erned by the circumstances of each case, and where there is a valid excuse given for the failure to pay the costs in·curred in the former action, it will not compel such payment as a condition of permitting the second to proceed.

Under the Code there is no doubt the equity rule prevails; and while the court will not permit vexatious litigation, it will in a proper case excuse the non-payment of ·costs in the case previously instituted.

The common law procedure was for a rule to show cause, and the order required the payment of costs by a ·day named, or the cause to be dismissed. It was not by motion to dismiss, as in the case at bar. In any view of the case, therefore, the motion was properly overruled.

Second—It is claimed that the court erred in overruling the motion to instruct against the plaintiff below upon the ·conclusion of his testimony in chief. It is unnecessary to examine this question, as upon the overruling of the motion the defendant below offered testimony in support of the defense, and thus waived any error, if such there was, in overruling the motion. In addition to this, the motion was not absolute and without reservation, but upon condition.

Third—The testimony tends to show that the accident ·occurred on Sunday, the 14th day of June, 1885, at or near what was then known as Sheeley's crossing of the Union Pacific railway—now Twenty-sixth street in the ·city of Omaha; that the defendant resided on the line of said railway at or near said crossing; that in the morning of that day he went into the city and was shaved, and afterwards attended church. He had also taken a dram of whiskey in the morning and two after the service. The proof, however, fails to show that he was in any manner affected by the liquor. He started for home between 12 M. and 12:30, and followed the streets as far as Seventeenth street at the lumber yard, and from there followed the railroad to Sheeley's crossing. At Sheeley's crossing,

and for several blocks east and west of that point, there was at the time of the accident a double track on the railway, the tracks being about nine feet apart. The trains running into Omaha went in on the south track, and those going out, on the north one. It appears to have been customary for persons who lived along the railway to walk on the tracks, and the plaintiff testifies that he got on the south track, walked up that until he heard and saw a Missouri Pacific freight train going into Omaha on that track, when he stepped into the space between the two tracks or roads and walked there until he reached Sheeley's crossing, when in crossing the north track he was struck by an engine.

The plaintiff below testifies that the Missouri Pacific train passed him near Twenty-fourth street, and he was then walking between the tracks, and continued to walk between the tracks until he reached Sheeley's crossing, when he turned to the right and crossed the north track; that he was on the end of a tie and about to step off when the engine struck him; that there is a curve in the railway east of Sheeley's crossing, so that a person cannot see down the track more than twenty or thirty yards; that almost immediately before he was struck the engineer had blown the whistle "toot, toot," but there was not time to step off the tie.

The testimony of the engineer corroborates this testimony in several respects, as he testifies, in effect, that the plaintiff below was not run over, but was struck with the cross-bar of the engine.

The engineer testifies that he was running a light engine without a load to Gilmore for the purpose of taking a train from there to Grand Island; that the tender of the engine had an air-brake upon it which was under the control of the engineer; that he noticed the plaintiff below walking between the tracks until he was just east of Sheeley's crossing, when he stepped upon the track to cross the same.

17

On cross-examination the engineer testified that he could stop that engine, as it was running, in from thirty to forty-five feet.    The efforts he made to stop the engine are stated by himself as follows :

Q. Did you reverse the engine or attempt to reverse it when you saw this man on the track?

A. It was not necessary.

Q. The question I asked you is, did you do it, not whether it was necessary or not?

A. When I saw him on the track I reversed the engine.

BY THE COURT: Answer the question just as it is asked, and not wait for the court to tell you again.

BY MR. SMYTH : When you first saw this man did you reverse the engine?

A. I did not.

Q. Did you attempt to reverse it?.

A. I did not shut the steam off.   I put the air-brake on and shut off the steam and went slower and slower.

Q. Did you put on the air-brake the moment you saw him ?

A. When I saw him on the track?

Q. When you saw him first you put on the air-brake?

A. I went slower; yes, sir.

Q. State whether or not you applied the brakes when you saw this man first.

A. Yes, sir.

Q. Instantly, upon seeing him you applied the brakes?

A. I went slower.

Q. Did you apply the brakes?

A. Yes, sir ; what brake I had.

Q. Did you shut off the steam when you saw him first?

A. Yes, sir.

Q. You shut it all off just the moment you saw him; is that correct?

A. Yes, sir; I think so, anyway.

Q. You attempted to do it?

A. I did do it.

From which it appears that he did not attempt to stop the engine, but simply slow up.

The engineer and some other witnesses testify that the accident occurred just east of the Sheeley crossing, on the private grounds of the railway near a telegraph pole, and that the plaintiff being improperly on the track the company is not liable.

Upon the question as to the place where the accident occurred there is a direct conflict in the testimony. A number of witnesses testify that it occurred on the crossing, and that the telegraph pole has been moved since the accident. The question, therefore, was proper for a jury to consider.

But suppose the accident did not occur on the crossing, but the engineer, after seeing the imminent danger to the party on the track, could, by the exercise of ordinary care, have stopped his engine and prevented the accident, but did not, the company would without doubt be liable.

The rule is, that although the plaintiff has negligently exposed himself to an injury, yet if the defendant, after discovering the exposed condition, inflicts the injury upon him through a failure to exercise ordinary care, the plaintiff may recover damages. (2 Thompson on Negligence, 1157; *Barker v. Savage*, 45 N. Y., 191, 194; *Brown v. Lynn*, 31 Pa. St., 510; *Northern, etc., R. Co. v. Price*, 29 Md., 420; *Locke v. First Division, etc., R. Co.*, 15 Minn., 350; *Nelson v. Atlantic, etc., R. Co.*, 68 Mo., 593; *O'Keefe v. Chicago, etc., R. Co.*, 32 Ia., 467; *Morris v. Chicago, etc., R. Co.*, 45 Id., 29.)

The rule is very clearly stated by Judge Thompson in his valuable work on Negligence, pp. 1105–1157. In *McKean v. B., C. R. & N. Ry. Co.*, 55 Ia., 192, it is said the rule is required by humanity and reason, citing *Morris v. C., B. & Q. R. Co.*, 45 Ia., 29. To the same effect,

*Brown v. H. & St. J. R. Co.,* 50 Mo., 461; *Omaha Horse R. Co. v. Doolittle,* 7 Neb., 481; *Burnett v. B. & M. R. Co.,* 16 Id., 332; *Cook v. Pickrel,* 20 Id., 433; *U. P. R. Co. v. Sue,* 25 Id., 772.

Even if it be conceded that the plaintiff below was unlawfully on the track, and did not look for an engine before crossing the same, still there is testimony in the record from which the jury would be warranted in finding that after the engineer became aware of the perilous condition of the plaintiff below he could, by the exercise of ordinary care, have stopped the engine. This was proper to submit to the jury.

After the testimony of the plaintiff below had been introduced the court permitted the jury, under proper instructions, to visit the scene of the accident in a body, so that they might be better able to apply the testimony.

The verdict was for $1,000. The injuries are shown to have been very severe, and the verdict certainly is not excessive. All questions seem to have been fairly submitted to the jury, and no error is apparent in the record. The judgment is therefore

AFFIRMED.

THE other judges concur.