E. J. ROOT v. DES MOINES RAILWAY COMPANY, Appellant.

Street Railways:  INJURY TO PASSENGER:  NEGLIGENCE.  The fact that a motorman left his car and the conductor was then in sole charge in the operation of the same was not of itself such negligence as to render the company liable to one injured while alighting from the car.

Negligence:  INSTRUCTIONS.  Under the facts in the case, an instruction that, as a matter of law, it was the duty of a motorman to anticipate that a passenger would step from a car while in motion, was error, as the question of his negligence is ordinarily for the jury.

Negligence:  INSTRUCTIONS.  An instruction, in an action for injury received in alighting from a street car, that if the negligence of plaintiff contributed in a "material" degree to the injury she could not recover, was error. It is sufficient if such negligence appears to have been an efficient cause of the injury.

*Appeal from Polk District Court.*—HON. CHARLES A. BISHOP, Judge.

THURSDAY, JANUARY 28, 1904.

THE defendant appeals from a judgment for damages.— *Reversed.*

*N. T. Guernsey* for appellant.

*Read & Read* and *Carr, Hewitt, Parker & Wright* for appellee.

Ladd, J.—The facts of the case are stated in the opinion filed on the former appeal, 113 Iowa, 675. The only assignments of error on rulings during the second trial, save that the verdict was excessive, relate to the charge of the court. That, when considered in its entirety, is such as to obviate the necessity of passing upon more than three of the instructions given. It will be recalled that the motorman left the car at Twenty-Fourth street, and that the conductor became acting motorman in sole charge of the car; that plaintiff claimed that she, by nodding her head near the alley before reaching Twenty-Seventh street, signaled the motorman to let her off, but that the street intersection was passed some distance before the car was slowed, as she thought; for her to alight, and when she undertook to do so the car suddenly moved or jerked forward, causing her to fall; that, on the contrary, the motorman denied having received any signal, or having knowledge that she wished to get off. Another testified that the car was moving as fast as a person ordinarily walks when she stepped to the ground, and that its speed was not increased until she had alighted. After defining the motorman's duties with respect to starting when a passenger is getting off, the court added:

"The fact that there was not both a motorman and a conductor on the car on which plaintiff was a passenger does not of itself establish negligence on the part of defendant, such as would render it liable in this action; but you may take such fact into consideration, in connection with all the other facts and circumstances proven upon the trial of the case, in determining whether or not the defendant was guilty of negligence, and in this connection you will carefully consider all of the other instructions herewith given you."

1. Injury to passenger: negligence.

This was doubtless in the way of caution, and given in the interest of defendant. Its object was to guard against improper inferences being drawn from the departure of the motorman, and to call the jury's attention to the fact that but one man was operating the car. To avoid the possibility of a misunderstanding upon another trial, however, it may be well to eliminate the latter portion of the paragraph, as the issues must be determined on the theory that the acting motorman was competent, and properly alone in control.

II. Exception is taken to the seventh paragraph of the charge, for assuming that, if the acting motorman saw or ought to have seen the plaintiff's signal, he ought to have anticipated that she would attempt to alight from the car where she did. The portion criticised may be set out:

2. Negligence: instructions.

"Keeping in mind the instructions hereinbefore given you relating to such subjects, you are instructed that if you find that plaintiff had given a signal when and in the manner claimed by her, and that such signal had been or ought to have been observed by the acting motorman, then, having so found, it became the duty of such motorman to anticipate that, as he brought his car to a standstill, the plaintiff would make the attempt to get off the car, and it was his duty to look to see if she was about to do so; and, upon ascertaining that she was making the attempt, it was his further duty to hold the car, without restarting it forward, until she could safely alight therefrom. It follows as a matter of course, that, if the motorman failed in the performance of the duties so imposed upon him, the facts having been found by you as stated, he was guilty of negligence, which would be the negligence of the defendant, and you will be authorized to so find in making up your verdict."

On the former hearing we said with reference to the sufficiency of the evidence that it "was such that the jury may have found that the plaintiff reasonably assumed that the car was stopping for her to alight, and that the conductor ought to have anticipated her action in leaving it." The

point now made was not raised in argument, nor passed upon by the court, as the opinion clearly shows. Nor do we think that, under the circumstances of this case, the motorman was bound, as a matter of law, to know that plaintiff would undertake to step from the car where she did, even though signaled to stop as claimed. The rule of the company was to stop at street crossings only. Had the car stopped there, it may be, as counsel contends, that the motorman must be assumed to have known that one who had requested the stop would attempt to get off. And the circumstances might be such as to foreclose inquiry where the stop has been made a short distance farther on. But if moving so rapidly as to render an attempt to alight dangerous, then, surely, he ought not to be required, in the absence of knowledge, to assume that any one will take the risk. The vice in the instruction is that it entirely overlooks the operation of the car, and, irrespective thereof, fixes upon the motorman the imperative duty of anticipating the purposes of the passengers, regardless of whether they act in the reasonable belief the car is stopping for them or not. Here the car was beyond the street intersection, and there was no evidence that it had come to a standstill. True, plaintiff declared it was barely moving. But according to another witness it was moving as fast as a person ordinarily walks, and the acting motorman testified that as the car approached the switch west of Twenty-Seventh street he turned the current off, and partially set the brakes, in order to lessen the danger of the car getting off the switch points; that after passing the switch he turned the current on again, but, noticing that a horse hitched to a post was frightened somewhat, he brought the car under control and slowed up; that when the front end came opposite the horse he turned the current on again. If the account of the two last witnesses should be accepted, then the car must have been moving at a rate of three or four miles an hour, and the motorman's attention somewhat diverted by the switch and the frightened horse. In such circumstances, it would be an unsafe rule to lay down that a motor-

man, as a matter of law, was bound to anticipate a passenger would step from a car while in motion, even though it had slowed somewhat, and she believed that he was doing so to let her off. If it would have been negligent for her to have stepped off, he was not required to count on her doing so. Whether it would have been negligent is, as held on the former appeal, ordinarily a question for the jury. If so, it logically follows that whether the motorman, in the exercise of ordinary care, should have anticipated that a passenger would do so, is also a jury question.

III. Only such portions of the eleventh instruction as are criticised need be set out:

"The plaintiff, you will observe, has upon her the burden to establish by a preponderance of the evidence that she was not guilty of contributory negligence, or, stating the proposition in another way, that she did not by her own acts or conduct cause or contribute in any material degree to her own injury. It was her duty to exercise such care and diligence to avoid injury to herself as an ordinary prudent and careful person would exercise under all of the circumstances shown by the evidence, and, if she failed to do this, she was guilty of negligence; and, if you find such to be the fact, she cannot recover in this action, notwithstanding that you may have already found that the defendant was also guilty of negligence.     *     *     *

3. NEGLIGENCE: instructions.

"If you find that she did not so act, and that consequently her accident and injury was, in whole or in any material part, the result of contributory negligence on her own part, then she cannot recover in this action, and you will so say by verdict. If, on the other hand, you find that she did not in any material sense or degree contribute to her accident and injury, then you will proceed to the further consideration of the case as you are hereinafter instructed."

Instructions in similar language have been twice condemned by this court. *Artz v. C. R. I. & P. R. Co.,* 38 Iowa, 293; *Banning v. C., R. I. & P. R. Co.,* 89 Iowa, 74. See, also, *Laflam v. Missisquoi Pulp Co.,* 74 Vt. 125 (52 Atl. Rep.

526). The first-cited case, in passing upon an instruction to the effect that if defendant was negligent, causing the injury, "and the plaintiff did not, by carelessness on his part, materially contribute thereto," he was entitled to recover, but could not if, "by carelessness on his part, he materially contributed thereto," the court said: "Had the court informed the jury that for the plaintiff to contribute in any degree to the injury by his own negligence would have been material, and would defeat his recovery, the use of the term 'material' would have been harmless, though unnecessary. Without this explanation the jury would naturally understand the court as informing them that the plaintiff might have been guilty of a degree of negligence which was not material and notwithstanding which he might recover. One of the meaning of the term 'material' is, 'In an important degree' (see Webster's Unabridged Dict.).; and this is the meaning which would properly be attached to it as used in these instructions. They very clearly import that there might be a degree of negligence on the part of the plaintiff contributing to the injury which was not important, and would not defeat his right to recover; that if he did not, by carelessness on his part, contribute 'in an important degree' to the injury, he might recover. In other words, that the plaintiff might contribute in some degree to the injury, but that if his carelessness contributed to the injury in a higher or greater degree, which the court terms 'material,' he would not be entitled to recover." True, contributory negligence was correctly defined, but the defect in the charge, as in the cited case, is that it undertook to limit the influence which must be exerted on the result in order to defeat recovery. If it in fact contributed to the injury as an efficient cause, the law will not measure the extent thereof, nor compare it with that of defendant's negligence. Nor, is there anything in the suggestion that by the language used the court merely intended that the negligence of plaintiff must have directly or approximately contributed to the injury. The extent to which the negligence contributed was plainly what the court

sought to define.   Another portion of the instruction criti-
cised is substantially a copy of one requested by defendant,
and for this reason it cannot be heard to complain.

For the errors pointed out, the judgment is REVERSED.