WM. H. CAMP v. CHICAGO GREAT WESTERN RAILWAY COM-PANY, Appellant.

**Railroads:** INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. In an
1 action by an employe, for injuries received from a passing engine, while engaged in his employment about the defendant's switch yards, the evidence is considered, and held sufficient to take the case to the jury on the question of contributory negligence.

**Speed of trains:** ORDINANCES: BENEFITS. A city ordinance limiting
2 the speed of trains within the city limits, is for the protection of employes of a railway company as well as others, having occasion to go upon the tracks; and an employe does not assume the risk of a failure to observe the ordinance, unless he has continued in the employment with knowledge of the violation.

**Evidence:** NON-PREJUDICIAL. The admission of evidence, tending to
3 show that the switch engine might have been operated on another track, so as to have accomplished its purpose and thus have avoided the accident, even though immaterial, is held to have been without prejudice.

**Instructions:** UNSUPPORTED ISSUE. The submission of a question un-
4 supported by the evidence, will not require a reversal, where the

instruction was so guarded by the language of the court that no prejudice could have resulted.

**Instructions:** CONTRIBUTORY NEGLIGENCE: REASONABLE CARE. In a personal injury action the court charged, that if the jury found the defendant was negligent, and that plaintiff was injured as the result of such negligence and was in no manner "or to any material degree negligent himself," or in no manner or to any extent contributed to his own injury, he was entitled to recover. *Held*, that the language quoted referred to the amount of care required, and not to the extent of plaintiff's contribution to his injury by reason of his failure to exercise care, and was not therefore erroneous.

**Second trial:** STAY OF PROCEEDINGS: PAYMENT OF COSTS. Where plaintiff dismissed a former action because of inability to prove certain facts, which became material during the trial, and on a subsequent trial made a showing that he was without means, refusal of the court to stay the second trial until plaintiff had paid the costs of the first, was not error.

*Appeal from Marshall District Court.*—HON. OBED CASWELL, Judge.

THURSDAY, MAY 12, 1904.

ACTION to recover damages for personal injury received by plaintiff, while in the employ of defendant, by reason of the alleged negligence of defendant's servants in operating a locomotive engine, causing it to run against and strike plaintiff. Verdict for plaintiff for $1,500. From judgment on this verdict defendant appeals.— *Affirmed.*

*Carr, Hewitt, Parker & Wright* and *J. L. Carney,* for appellant.

*J. M. Parker* and *H. C. Lounsberry,* for appellee.

McCLAIN, J.— Just before the accident resulting in injury to plaintiff, he had been engaged, as an employe of defendant company, in clearing the snow from the frogs and switch points in defendant's yard at Marshalltown. Having completed his work at a certain frog on the main line of

track running east and west, he proceeded westward along the track to go to a toolhouse situated beside the track and about one hundred and eighty-two feet distant, and when within about twenty-five feet of the toolhouse, and while walking on the ends of the ties along the track, he was struck by the tender of an engine coming from the east, and severely injured.

I.    The ground for reversal especially relied on is that the evidence shows without conflict that plaintiff was guilty of contributory negligence in failing to exercise any reason-

**1. INJURY TO SERVANT: contributory negligence.**    able care to avoid the danger incident to being so near the track that he was liable to be struck by an engine moving on the track.    The testimony of the plaintiff, as a witness, tended to show that after completing his work at the frog he looked eastward along the main track, and, as he saw no engine approaching, proceeded westward, without any further precaution for his safety, until he was overtaken and struck by an engine coming from the east.    It was unquestionably plaintiff's duty to use reasonable care in looking out for his own safety, and if he failed to do so, and such failure contributed to his injury, he cannot recover.    The fact that he was an employe did not relieve him from the duty to exercise care. The case was not one where plaintiff was privileged from exercising the care for his own safety which is ordinarily required, on account of his necessary employment.    He was not at the time engaged in any occupation calculated to distract his attention, and should have had in mind the fact that engines and cars might be moved along the track at any time.    But it appears from his testimony that, when he looked eastward at the frog along the track, it was unobstructed to such distance that he could have seen an approaching engine, if near enough to him to overtake him, approaching at the rate of six miles an hour, the maximum speed allowed by the ordinances of the city of Marshalltown, before he should reach the toolhouse, and, if he did look,

and there was no engine or train in sight coming from that direction, and near enough, approaching at that rate of speed, to overtake him before reaching the toolhouse, he was not guilty of contributory negligence in not looking again before reaching the toolhouse, or in not keeping far enough away from the track so as not to be struck by the engine. It is certainly not necessary, as a matter of law, for one who is an employe, walking along or near a railroad track in the discharge of his duty, to be looking backward at every instant of time, nor is it necessary for him to select a place to walk which is beyond the reach of passing cars or engines, if, in the exercise of reasonable care, he has ascertained that he is not in danger from any car or engine approaching at a lawful rate of speed. The argument for appellant is predicated on the assumption either that if plaintiff while at the frog had looked eastward he must have seen the engine approaching, or that his view of the main track toward the east, where there was a curve, was in some way obstructed by a pile of ties near the track, or freight cars on an adjoining track, or a water tank which was also near the track, so he could not see an engine approaching, and should therefore have stepped aside from the track to get a better view before proceeding to the toolhouse.

But if there is any theory of the evidence on which the jury could find, as they did in answer to a special interrogatory, that plaintiff was not guilty of contributory negligence, then the verdict is supported by the evidence and must stand. We think the jury might have found, and it appears that on this theory they based their verdict, that, at the time plaintiff looked eastward from the frog, the engine was concealed from his view by the water tank, or pile of ties beside the track, or freight cars on an adjoining track and on the inside of the curve, and that it was therefore more than 300 feet from the frog when plaintiff started from that point to walk to the toolhouse. If he walked at the rate of three

miles an hour, he would have reached the toolhouse before the engine, coming at a rate of speed not exceeding six miles an hour, could have overtaken him. The only theory consistent with plaintiff's evidence would be that the engine was running at a greater rate of speed than six miles per hour. As to its rate of speed, there was therefore a conflict in the evidence between the testimony of plaintiff that in less than a half minute after he started west from the frog, going at an ordinary rate of speed, he was struck by the engine, and the testimony of defendant's witnesses that the engine was not running faster than six miles per hour. It was for the jury to weigh this evidence, and they were justified in reaching the conclusion that the speed was greater than six miles per hour, and that the fact that the engine was thus running at an unlawful rate of speed was the cause of the injury to plaintiff, and, furthermore, that this was without any failure of plaintiff to use ordinary care in anticipating the danger from the approach of an engine.

The principles of law involved in the conclusion which we reach, that there was some evidence to support the finding that plaintiff was free from contributory negligence, are so

2. SPEED OF
TRAINS:
ordinance;
benefits.

well settled that it would be useless to cite authorities or discuss the cases referred to in arguments of counsel. We have conceded to appellant every proposition of law for which counsel contend, save one, which is that the ordinances of the city of Marshalltown were not admissible in evidence for the purpose of determining whether defendant was negligent in operating its engine at a greater rate of speed than six miles per hour, and whether plaintiff was justified in assuming that no engine or cars would come along the track from the east at a higher rate of speed. Since this case was tried in the lower court, we have held in the case of *Martin v. Chicago, R. I. & P. R. Co.,* 118 Iowa, 148, that such an ordinance has for its object not only the protection of those having occasion to go on or across the tracks, but also employes

of the railroad, and that an employe does not assume the risk of the failure of the company to observe the requirements of a city ordinance in regard to the rate of speed at which it operates its trains within city limits. In that case it appeared that the employe, by continuing in his employment, assumed the risk of an habitual violation of the ordinances of the city as to the rate of speed, such habitual violation being necessarily known to him in consequence of his continued employment on trains running at a rate of speed in violation of the ordinances; but there is no evidence in this case that there was any such custom on the part of the defendant company, or that plaintiff had knowledge of such custom if it existed.

We do not wish to be understood as holding that an employe can omit reasonable precaution for his safety where he is not in a dangerous situation, and if it appeared that plaintiff, with knowledge that the engine was approaching, even if at a negligent rate of speed, had failed to get out of the way, we think he would have been guilty of contributory negligence; but it is not conclusively shown that he had such knowledge. While he was bound to know that engines or cars might come along the track at any time, he was not bound to know nor to anticipate that they would come at an unlawful rate of speed, and, if he took such precaution as would be suggested to a reasonable man against being injured by engines or cars lawfully operated, we think he was not guilty of contributory negligence. The evidence is in conflict as to whether the bell on the engine was rung as the engine approached the street crossing just west of the point where plaintiff was struck; nor can we say, as a matter of law, that plaintiff must have become aware, had he been in the exercise of ordinary care and watchfulness, of the approach of the engine by reason of the noise which it would make in moving. There was a fresh snow on the tracks, and the noise made by the moving engine may have been less than usual on that account. If plaintiff heard the bell or

the noise of the engine, the question would no longer be whether it was moving at a lawful rate of speed, but whether, being advised of its proximity, plaintiff used reasonable care to avoid being struck. We reach the conclusion that there was enough evidence to go to the jury on the question of contributory negligence.

II. Error is assigned with reference to the admission, over objection, of the testimony of a witness as to how the engine might have been switched so as to accomplish the pur-

3. EVIDENCE: non-prejudicial.

pose in view in backing it along the track where plaintiff was injured, without operating it on that track at all. It is clear that, if the engine was being properly operated at the time of the accident, it would be wholly immaterial that it might have been run on some other track to accomplish the same purpose. We do not understand how this evidence could be material, but possibly it had some bearing on the issue as to whether defendant was negligent in not employing a sufficient number of men to properly operate its engine and tender, the claim being that a switchman should have been provided so that the engineer or fireman need not have left the engine in order to throw a switch; but we do not care to go into this branch of the case, for we cannot believe that the evidence, even if immaterial, was in any way prejudicial to the defendant.

III. An instruction given by the court is criticised on the ground that defendant's duty to use care in the employment of servants to operate its engine was referred to,

4. INSTRUCTIONS: unsupported issue.

although there was no evidence that the engineer or fireman was incompetent. We think the objection is well taken; and that the matter should not have been referred to, but we feel justified, under the record, in disposing of the question by quoting the following language found in *Trapnell v. Red Oak Junction,* 76 Iowa, 744, 747, "If this instruction was the only error shown by the record, we might not be disposed to disturb the judgment; for while the instruction submits a question to the jury upon

which there is no evidence, and is therefore erroneous, it might be well said that the instruction is so carefully guarded by the language of the court that no prejudice could have resulted from it."

IV. In one instruction the following language is used: " If you find that the defendant was negligent as alleged, and that the plaintiff was injured as the direct result of such

**5. INSTRUCTIONS: contributory negligence; reasonable care.**

negligence, and was in no manner *or to any material degree negligent himself,* or in no manner or to any extent contributed to his own injury, then he is entitled to recover all damages naturally and directly resulting to him from such injury." Another paragraph of the charge is in this language: " If, then, you find that the plaintiff has established by a preponderance of the evidence the allegations of his petition, or some one or more of his material allegations, charging negligence on the part of the defendant, and you further find that the plaintiff was in no manner and *to no material degree* negligent that contributed to his alleged injury and damage, and you further find that the plaintiff was injured and damaged as the direct result of defendant's alleged negligence, then your verdict should be for the plaintiff." In the recent case of *Root v. Des Moines Railway Co.,* 122 Iowa, 469, we held that an instruction was erroneous in which the jury was told that plaintiff in actions for personal injury must show that he did not by his own acts or conduct contribute in any material degree to his injury. It is pointed out in that case that if the negligence of plaintiff contributed in any degree or to any extent to bring about his injury he must fail. But, in the instructions just quoted, the term " material degree " does not relate to the extent of plaintiff's contribution to his injury, but to the extent of his negligence. In *Jerolman. v. Chicago G. W. R. Co.,* 108 Iowa, 177, an instruction was held erroneous in which plaintiff, suing for personal injury, was required to establish by preponderance of evidence that she was " free from all fault or negligence that contributed

to produce the fall" which resulted in her injury, or, as stated in another instruction, "that such fall was not in any manner due to any fault or negligence on the part of the plaintiff herself," or, again, "that she was free from all fault or negligence which contributed directly to produce the fall in question." And the following language is used in the opinion: "The vice of the instruction emphasized in the passage quoted from others is that all negligence is excluded, and the plaintiff held to the exercise of extraordinary care for her safety. Had 'fault' or 'negligence,' as used, been defined, this would have been obviated. Without such limitation, the jury was warranted in understanding that any negligence whatever on the plaintiff's part, however slight, required a verdict for the defendant." Many cases are cited supporting the conclusion reached by the court.

In the instructions which we are now considering, the phrase objected to is used in directing the jury in determining whether plaintiff was negligent, and they were properly instructed that if negligence on the part of the plaintiff contributed to the injury there could be no recovery. As pointed out in the *Jerolman Case, supra,* if the degree of negligence on the part of plaintiff was that sometimes denominated "slight," the plaintiff would not thereby be barred from recovering, for he was only bound to use ordinary care, or such care as a reasonably prudent person would use under such circumstances to avoid danger. As the instruction reads, he was barred from recovery if he was, to paraphrase the language, *materially* negligent. We do not say that in this respect the instruction was correct, and the language used is certainly not to be commended, but it is not open to the objection that plaintiff was thereby permitted to recover if his negligence did not *contribute to a material degree* to his injury. It may be that the instruction required a higher degree of care on the part of plaintiff than should be required, but it certainly does not require a less degree of care than should be required, and the defendant has no

ground of complaint. In short, we hold that the phrase
"material degree" relates to the amount of care required,
and not to the extent of contribution to the injury by reason
of failure to exercise such care. In other instructions con-
tributory negligence is correctly defined, and we reach the
conclusion that there was no prejudice to defendant in the
instructions quoted.

V. It was made to appear to the court that there had
been a previous trial in the same court of an action in which
plaintiff sought to recover from defendant on account of the
**6. SECOND TRIAL:** same injury, and that at the conclusion of the
**stay of proceedings;** evidence in such former action the plaintiff,
**payment of costs.** to avoid the direction of a verdict against him,
dismissed his action; and on these facts counsel for defend-
ant in this case predicated a motion, made before the trial
was commenced, that the trial be postponed until judgment
rendered against plaintiff for costs in the former action had
been paid. This motion was overruled, and errors are
assigned on such ruling. While we find many cases in other
jurisdictions supporting a rule to the effect that plaintiff in
a second action, for the same cause of action, should not be
allowed to proceed until the costs of the former action in
which he was nonsuited or which was voluntarily dismissed
had been paid by him, we do not find that any such rule has
been adopted in this State. The question seems not to have
been considered in this court. It is enough for the present
to say that, even where such a rule is recognized, the plaintiff
is allowed to make a showing of excuse for prosecuting a
second action notwithstanding his dismissal of the former
one. The object of the rule is to discourage vexatious litiga-
tion, and where a reasonable excuse is shown the court may,
in the exercise of a reasonable discretion, refuse to inflict
the penalty. *Union Pacific v. Mertes,* 35 Neb. 204 (52
N. W. Rep. 1099).

In this case the plaintiff, in resistance to the motion to
postpone, showed not only that he was without means, and

so crippled by the injury complained of as to be unable to earn a living, but also, by affidavits of counsel, that the first case was dismissed for want of material evidence which could not be procured after its materiality became apparent on the trial. Of course, if the counsel had known the names of the witnesses by which the material facts could be proven, and had shown that such witnesses, while not then available, could probably be secured for another trial, they might have protected the rights of their client by asking for a continuance; but it appears they were unable at the time to ascertain whether such evidence could be procured, and we think they cannot be charged with promoting vexatious litigation in preserving the opportunity to bring a second action after such evidence should be discovered. On the whole, we are satisfied that the court acted within the scope of its reasonable discretion in refusing to postpone the trial until plaintiff should pay the costs of the first proceeding.

The judgment of the lower court is AFFIRMED.