KANSAS LOAN & TRUST CO. v. ELECTRIC RY., LIGHT & POWER CO. OF SEDALIA, MO., et al. (WESTERN ELECTRICAL SUPPLY CO.. Intervener).

(Circuit Court, W. D. Missouri, Central Division.   May 10, 1901.)

1. RAILROADS—FORECLOSURE OF MORTGAGES—PREFERENTIAL CLAIMS.
   The right of one furnishing supplies to an insolvent railroad company to a preference over the mortgagee is dependent on the fact that there has been a diversion of the net earnings of the mortgaged property over and above the necessary expenditures for operation, and that such diversion has inured to the benefit of the mortgagee, and the burden rests upon the claimant of such preference to establish such facts.

2. SAME—REFERENCE—REPORT OF MASTER.
   Where the claim of an intervener in a railroad foreclosure suit to preference of payment over the mortgagee has been referred to a master, his findings should show whether there has been a diversion of net income since the intervener's claim accrued, and whether, if so, it inured to the benefit of the mortgagee, and his report should contain a summary statement of the evidence on which his conclusions are based, with references to the evidence in the record, showing the amount diverted, and the particular manner in which it was used, to enable the court to see, from the facts found, whether it went into improvements of the property or its betterment, or the payment of interest.

3. EQUITY—REFERENCE—EVIDENCE OBJECTED TO.
   On a hearing before a master. where evidence is offered, and its competency or admissibility is objected to, the master should receive it, subject to the objection, so that the court may pass upon the matter on review.

Frank Hagerman, Willard P. Hall, and J. W. S. Peters, for complainant.

Scarritt, Griffith & Jones, Fred Fuller, Geo. A. Whitcomb, and W. S. Shirk, for defendants.

H. T. Williams, for intervener.

PHILIPS, District Judge.   This cause has been submitted to the court on exceptions filed to the special master's report allowing the claim of the intervener as a preferred claim, to be paid out of the proceeds of the sale of the mortgaged premises prior to the claim of the mortgagee thereon.   The master's report, as submitted to the court, with the other papers in the case, presents the matters in controversy in such shape that it is impossible for the court to intelligently understand and pass upon the matters in dispute.   As the intervener's right to a preferential claim is dependent upon the fact that there has been a diversion of the net earnings of the mortgaged property over and above the necessary expenditures for operation, and that such diversion has inured to the benefit of the mortgagees (Bank v. Doud [C. C. A.] 105 Fed. 123), the burden of proof rests upon the intervener to establish this fact.   If the net earnings of the operation of the railroad over and above the expenses of operating

were in fact diverted into improvements of the mortgaged property, and for its betterment, thereby enhancing the value of the mortgagee's security, to enable the court to determine such fact the master's report should contain a summary of the evidence, showing not only the fact of diversion, but approximately the amount thereof; and if it is claimed that such diversion inured to the benefit of the mortgagee in the way of improvements of the property, or in paying interest on the mortgage debt, or dividends and the like, the master should report and show by the evidence before him into what property the money diverted went, so that the court can see from the facts found whether it went into improvements of the property or its betterment. In other words, the facts found should show what money went in a particular direction, and in what it was invested, so that the court can see from the facts found whether or not the mortgagee received a benefit from the diversion, so as to postpone its lien to that of the claim of the intervener.

The master's report in this case, for instance, finds that "large sums from current earnings were diverted from the payment of current operating expenses to payment for betterments and improvements during the period from May 1, 1898, to February, 1900, when the receivers were appointed; but I am unable to tell how much was so diverted." The first objection to this statement is that the master has taken a period ranging from May 1, 1898, to February, 1900, covering a period of nearly two years anterior to the appointment of the receivers, and beginning a year and a half nearly before the intervener's account against the defendant companies was created. This intervener has nothing to do with the earnings of the road, or their diversion by the road, prior to the creation of its debt. The creditor can only concern himself about diversions of the current earnings after the creation of his debt. It devolves upon the intervener to show what sums were diverted after the creation of his claim, and he must show by his evidence into what the diverted sum went, so that the court can determine whether it was an improvement or betterment which inured to the benefit of the mortgagee. If the master is unable to ascertain from the evidence presented by the intervener how much was diverted, and into what particular property the diversion went, the intervener's claim must fail for want of proof.

The report further says: "I find that the earnings for that period were $4,105.57 over and above the operating expenses, according to the testimony of Mr. Van Riper." As the term "that period" evidently refers back to the period from May 1, 1898, to February, 1900, how is the court to determine how much of that was earned between the creation of the intervener's claim and the appointment of the receivers?

The report further finds "that the receivers put $5,715.87 of the earnings of the company into betterments and improvements during the year ending March, 1901." There is no summary of the evidence given by the master as a predicate for this conclusion of fact, and no finding by him of what constituted the betterments and improvements. In other words, the report of the master is simply a con-

clusion drawn by him from the evidence, rather than a summary statement of what the evidence is from which the conclusion is drawn. The court observes from the testimony taken before the master in the cross-examination of the witness Van Riper that he testified from extracts or memoranda made from the books of the company kept by him, showing for what purposes the moneys had been expended by him, and, when counsel for complainant asked that such books be made a part of the testimony in some way, the master sustained objection by intervener's counsel to this request. This should have been admitted, and possibly from these books or accounts kept the master could have ascertained whether or not the moneys were used for betterments or improvements. In this connection, the court observes that at the hearing before the master, where evidence is offered and its competency or admissibility is objected to by the adverse party, the master should receive the evidence, subject to the objection, and the court will be able then to pass upon the matter on review.

One of the principal objects in referring cases like this to the master for hearing is to relieve the court from the labor and time of hearing a case either ore tenus or on depositions, and to have the assistance of the analysis and substance of the testimony by the master, with proper reference to the testimony of the witnesses, and the page of the testimony where it can be found, to enable the court the easier to determine whether the conclusion drawn by the master from the facts is supported by the evidence.

The court will therefore refer this matter back to the master, with directions to admit the books, or a transcript therefrom, called for from the witness Van Riper by complainant's counsel, which was excluded by the master; and for the master to make an amended report herein, setting out the substance of the testimony in the case before him respecting this claim, with an ascertainment, if found in the evidence, of what were the current gross earnings from the operation of the property on which the lien is sought to be enforced after the creation of the intervener's claim up to the time of the appointment of the receivers, and what were the net earnings, if any, during that period after deducting the ordinary expenses of operating the property; and, second, what were the gross earnings from the operation of the property during the receivership up to the year ending March 1, 1901, and what were the net proceeds after deducting from the gross earnings the expenses of operation, including repairs and wear and tear; and, third, whether there was any diversion of such net proceeds into other properties, and when diverted, and how much and into what were such diversions placed, if there be evidence showing such facts. If the master is unable to determine such facts from the evidence which has been submitted in the case, including the books kept by Van Riper aforesaid, he will report such conclusion.