CHARLES E. YATES ET AL. V. JONES NATIONAL BANK.*
CHARLES E. YATES ET AL. V. UTICA BANK.†
CHARLES E. YATES ET AL. V. THOMAS BAILEY.†
CHARLES E. YATES ET AL. V. BANK OF STAPLEHURST.†

FILED OCTOBER 19, 1905. Nos. 13,030, 13,031, 13,032, 13,033.

1. **Banks: MISCONDUCT OF OFFICERS: ACTION FOR DAMAGES.** Damages resulting to a national bank from the misfeasance or misman-agement of its officers are assets of the bank, and are recoverable only in an action brought by the bank or for the benefit of all the stockholders and creditors thereof.

2. ————: OFFICERS: LIABILITY: ACTION. The officers of a national bank are personally liable for false reports made and published by them in pursuance of section 5,211, Revised Statutes, United States, to the party injured thereby, and the right of the injured party to maintain the action does not rest on the federal statute but the common law.

3. **False Reports: ACTION: DEFENSE.** It is no defense to an action of that character that such reports were made and published by the officers without knowledge of their falsity. Following *Gerner v. Mosher*, 58 Neb. 135.

4. **Res Judicata.** A cause of action, once finally determined between the parties on the merits, cannot afterwards, so long as such judgment remains in force, be litigated by new proceedings, either before the same or any other tribunal.

5. ————: DEMURRER. The foregoing rule applies, not only to judg-ments which are the result of a trial of issues of fact, but also to judgments on demurrer, where such judgments go to the merits of the case; but a judgment on a demurrer, which is based on a technical defect of pleading, a lack of jurisdiction, or the like, does not involve the merits of the controversy, and will not support the plea of *res judicata*.

---

* Reversed, 206 U. S. 158.        † Reversed, 206 U. S. 181.

6. **Dismissal.** The voluntary dismissal of an action before final sub-mission does not operate as an estoppel, and is without prejudice to a future action.

7. ———: Costs: Second Action. Under our practice the common law rule, making the payment of costs in the action dismissed a prerequisite to the prosecution of another, is one which the trial court in the exercise of a sound discretion may or may not apply.

8. **Evidence** examined, and *held* sufficient to sustain the findings of the jury.

ERROR to the district court for Seward county: SAMUEL H. SORNBORGER, JUDGE. *Affirmed.*

*J. W. Deweese* and *Halleck F. Rose,* for plaintiffs in error.

*R. S. Norval* and *J. J. Thomas, contra.*

ALBERT, C.

In 1893 the Jones National Bank and the Bank of Staplehurst each brought an action against Charles W. Mosher, Homer E. Walsh, David E. Thompson, Charles E. Yates, Ellis P. Hamer, Ambrose P. S. Stuart, Richard C. Outcalt and Rollo O. Phillips; and Thomas Bailey and the Utica Bank each brought an action against all of the said defendants except David E. Thompson. The actions were brought in the district court for Lancaster county, and the several petitions, so far as the present inquiry is concerned, as substantially the same, and the allegations are, in effect, as follows: That from the 9th day of December, 1886, to the 21st day of January, 1893, the Capital National Bank of Lincoln was a corporation duly organized and existing under and by virtue of the banking laws of the United States; that the defendants were the directors and officers thereof, and, as such, had exclusive control and managment of its affairs; that during the whole of said period the bank was insolvent, as the defendants well knew, or by the exercise of due dili-

gence would have known, and that on or about the 23d day of January, 1893, it passed into the hands of a receiver, who at the commencement of the action was in possession of all of its assets; that from the 9th day of December, 1886, to the date such bank passed into the hands of the receiver, the defendants, in pursuance of the banking laws of the United States and on the demand of the comptroller of the currency, from time to time made statements, and caused and permitted statements to be made, to the comptroller of the currency, purporting to show the financial condition of such bank at the time such statements were respectively made, and caused such statements to be published in certain newspapers of general circulation in this state; that the defendants, although chargeable with knowledge of the true condition of said bank and that it was not in a prosperous condition, but insolvent, when such reports were respectively made, for the purpose of deceiving the plaintiff and others and thereby inducing them to deposit their money in said bank, made out and caused said statements to be made in such a way as to show that the bank was in a prosperous condition, and that it was safe and solvent; that such statements were brought to the notice of the plaintiff and that, relying thereon and believing them to be true, the plaintiff, induced thereby, made certain deposits in the said bank before it passed into the hands of the receiver; that, if each of the defendants did not have actual knowledge of the false and fraudulent character of such statements, and of the actual condition of the bank when such statements were made, his lack of knowledge was the result of his gross negligence in respect to his duties as an officer of the bank. Then follow allegations to the effect that the defendants, as officers of such bank, had loaned sums of money and had allowed and paid dividends to its stockholders while the bank was insolvent, contrary to, and in violation of, the banking laws of the United States. The concluding allegations are as follows: "And, by reason of the several violations

of the banking law, as above set forth, by these several defendants, they have become, and are, liable to this plaintiff for the damages he has sustained by reason of their said acts in the sum of $11,500, together with interest thereon from the 11th day of October to the 28th day of December, 1892, at the rate of seven per cent. per annum." In each case the defendants demurred on four grounds: (1) Want of jurisdiction of the subject matter. (2) Plaintiff's want of legal capacity to sue. (3) Defect of parties plaintiff. (4) Insufficiency of the facts stated to constitute a cause of action. The defendants also filed petitions, asking the removal of the causes to the federal court, for the reason that the actions involved a construction of the national banking act. The causes were removed, and thereupon the plaintiffs filed motions in the federal court, asking that the causes be remanded, for the reason that they involved no federal question. The motion was overruled.

In the action brought by the plaintiff Bailey, the federal court sustained the demurrer to his petition and dismissed the case. Bailey prosecuted error to the circuit court of appeals, where the rulings of the lower court on the motion to remand and the demurrer to the petition were sustained, and the judgment of dismissal was affirmed. *Bailey v. Mosher*, 63 Fed. 488. Whereupon the other plaintiffs dismissed their actions.

Thereafter, the plaintiffs each brought an action against the parties they had respectively made defendants before in the district court for Seward county. The petitions in the later cases, as they stood at the time of the trial, are substantially the same as those in the former, save that it is not alleged in the latter that the Capital National Bank was organized under the laws of the United States, nor that the statements therein mentioned, purporting to show the financial condition of said bank, were made in pursuance of the banking laws of the United States or on the demand of or to the comptroller of the currency. The concluding of the latter petitions is as

follows: "Plaintiff states that, by reason of the facts as above set forth and the false and fraudulent statements, advertisements and representations of the defendants, the plaintiff has been damaged in the sum of twenty thousand dollars ($20,000)." On the application of the defendants the case of *Bailey v. Mosher* was removed to the United States circuit court, on the theory that it was brought under the United States banking act for misfeasance or mismanagement of the defendants as officers of a national bank. On motion of the plaintiff the circuit court remanded the cause to the state court, holding that no federal question was involved. *Bailey v. Mosher,* 74 Fed. 15. When the cause again reached the state court, the several petitions were amended by interlineation, whereby they were brought to their present form. Whereupon, on application of the defendants, the cases were removed to the United States circuit court, on the theory that the amendment had injected a federal question. The circuit court overruled a motion to remand, sustained a demurrer to the petition and dismissed the cause. *Bailey v. Mosher,* 95 Fed. 223. On appeal, the question was presented to the circuit court of apeals, the judgment of the circuit court was reversed and the causes remanded to the state court, for the reason that they involved no federal question. *Jones v. Mosher,* 107 Fed. 561.

The subsequent pleadings are somewhat voluminous, and it will suffice to say that the questions hereinafter discussed are sufficiently presented. The defendant Stuart made default and judgment was taken against him. The defendants Hamer and Phillips died after the action was commenced; as to the former the action was revived against his estate; as to the latter no proceedings for revivor were had. The cases were all tried at the same time and submitted on the same evidence. At the close of the evidence the court directed a verdict in each case in favor of the defendant Walsh. As to the other defendants, in the several cases to which they were respectively parties, the jury found for the plaintiff and

judgment was given accordingly, from which the defendants respectively prosecute error to this court.

One of the principal contentions of the defendants, reduced to its simplest form, is as follows: (1) Damages resulting to a national bank from the misfeasance or mismanagement of its officers are assets of the bank, and are recoverable of such officers only in an action brought by the bank, or for the benefit of all the stockholders and creditors. (2) The damages alleged in the petition resulted to a national bank from the misfeasance and mismanagement of its officers. (3) Therefore, such damages are assets of the bank, and are recoverable only in an action brought by the bank, or for the benefit of all the stockholders and creditors. The major premise is so nearly a self-evident proposition that it requires no elaboration. It is recognized in *Bailey v. Mosher, supra,* and in the cases there cited. But we are not disposed to accept the minor premise. It is true the petitions show misfeasance and mismanagement on the part of the defendants as officers of the bank, and that the bank thereby sustained damages, but they show more than that. They show that the defendants made and published false and misleading statements concerning the financial condition of the bank, whereby the plaintiffs were induced to become and remain its creditors to their damage. In short, whatever other allegations may be contained in the petition, they also contain sufficient to constitute a common law action for deceit. That the party upon whom the deceit or imposition was practiced by the officers of a national bank may maintain an action against them in his own name and behalf for damages resulting to him therefrom, and that his right of action does not rest on the federal statutes, but the common law, is no longer an open question. *Stuart v. Bank of Staplehurst,* 57 Neb. 569; *Gerner v. Mosher,* 58 Neb. 135; *Gerner v. Yates,* 61 Neb. 100; *Prescott v. Haughey,* 65 Fed. 653; *Gerner v. Thompson,* 74 Fed. 125; *King v. Pomeroy,* 121 Fed. 287; *Briggs v. Spaulding,* 141 U. S. 132.

But it is contended that the petitions are substantially the same as that in *Bailey v. Mosher,* 63 Fed. 488, and that the circuit court of appeals held that such petition committed the plaintiff to the theory that his action was for misfeasance and mismanagement, resulting in damages to the bank, recoverable only in an action by the receiver for the benefit of all the stockholders and creditors. The difference between the petition in that case and those in the cases at bar has already been pointed out, and the importance which the circuit court of appeals attached to some of the allegations of the petition in that case, which are omitted from those now before us, is shown by the following taken from the body of the opinion:

"We feel constrained to hold that, properly construed, the petition contains but one paragraph or count, and states but one cause of action, and that the cause of action stated *is one for the misfeasance and mismanagement of* the affairs of the bank by the defendants as its officers and directors. We cannot adopt the view of the plaintiff in error that those clauses of the petition which state, or tend to state, a cause of action for deceit at common law, should be segregated from the other clauses of the petition, and held to constitute the statement of the cause of action. The court cannot reject the allegations of the petition which do state a cause of action under the banking act, for the purpose of converting mere matter of inducement or surplusage, contained elsewhere in the petition, into a substantive statement of a cause of action different from that which the petition in terms declares to be the foundation of the action. The plaintiff was not bound to state the legal effect of the facts set out in his petition, but, having done so, he cannot complain if his adversary and the court accept and act upon his own theory. Especially is this so when the petition is ambiguous, and will support that theory as well or better than any other.

"In the sense of the word, as used in code pleading, there is but one paragraph in this petition. The term

'paragraph,' as used in code pleading, means an entire or integral statement of a cause of action. It is the equivalent of 'count' at common law. It may embrace one sentence or many sentences; but, whether one or many, it constitutes a statement of a single cause of action. It is a requirement of some codes that, if the petition contains 'more than one cause of action, each shall be distinctly stated in a separate paragraph and numbered' (code, Ark. sec. 5,027); and all of them require that each cause of action shall be separately stated and numbered. The Nebraska code provides that, 'where the petition contains more than one cause of action, each shall be separately stated and numbered.' Consol. St. Neb. 1891, sec. 4,633 (93). And the supreme court of that state, construing this section, have said: 'A plaintiff cannot jumble his causes of action together.' *Schuyler Nat. Bank v. Bollong,* 24 Neb. 821. If, in drafting the petition, the pleader supposed he was stating more than one cause of action, he would undoubtedly have separately stated and numbered them, as required by the Nebraska code. No one can point out in this petition where the statement of one cause of action ends and another begins. The plaintiff cannot reform or amend his petition in this court. If it were possible to spell out of the averments of this petition, taken separately or together, an action for deceit, the court would be precluded from attaching that meaning to them by the positive statement contained in the petition itself that the action is grounded on the 'violations of the banking law' therein set out. Section 5,239 of the Revised Statutes of the United States provides that: 'If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents or servants of the association to violate any of the provisions of this title, all the rights, privileges and franchises of the association shall be thereby forfeited. * * * And in cases of such violation, every director who participated in, or assented to, the same shall be held liable in his personal and individual capacity for all

damages which the association, its shareholders, or any other person shall have sustained in consequence of such violation.' It is obvious that the plaintiff, in the inception of this case, had in view the enforcement of the defendants' liability under the last clause of this section."

From the foregoing it is clear that the court proceeded upon the ground that the plaintiff, by those allegations of his petition which are omitted from those in the cases at bar, had committed himself to the theory that his cause of action was one arising under the federal banking law for misfeasance and mismanagement, resulting in damages to the bank. Those very allegations, it held, precluded it from "spelling out" a cause of action for deceit. If those allegations are to be held of such importance when included in a petition, it seems to us that their omission and the studied omission of direct reference to the federal banking law from the petitions in the cases at bar are equally significant. Besides, it was expressly held in *Jones v. Mosher,* 107 Fed. 561, that the petition involved no federal question; consequently, it presented no case arising under the federal banking law. It and the other petitions before us do state a cause of action for deceit. We know of no rule of pleading that would justify this court in assuming that the plaintiff intended to plead a cause of action which he could not maintain, so long as he has pleaded facts sufficient to constitute one which he could maintain. It may be said, in passing, that in this state no such meaning is attached to the term "paragraph" as that given it by the court of appeals in that case.

It is further insisted that the judgment rendered in that case supports the plea of *res judicata* interposed against the plaintiff Bailey in his present action. It is elementary that a cause of action, once finally determined between the parties on the merits, cannot afterwards, and so long as such judgment remains in force, be litigated by new proceedings, either before the same or any other tribunal. And this rule is not limited to judgments

which are the result of a trial of an issue of fact, but applies as well to judgments on demurrer, where such judgments go to the merits of the case. *Gould v. Evansville & C. R. Co.,* 91 U. S. 526; *Bissell v. Spring Valley Township,* 124 U. S. 225; *City of Los Angeles v. Mellus,* 59 Cal. 444; *Gregory v. Woodworth,* 107 Ia. 151; *Rodman v. Michigan C. R. Co.,* 59 Mich. 397. But a judgment on a demurrer, which is based on a technical defect of pleading, a lack of jurisdiction, misjoinder of parties, or the like, does not involve the merits of the controversy, and is not available as *res judicata. House v. Mullen,* 22 Wall. (U. S.) 42; *Sivers v. Sivers,* 97 Cal. 518; *Roberts v. Hamilton,* 56 Ia. 683. When a plea of *res judicata* is interposed, the controlling question is whether the judgment offered to support it is based on the merits of the controversy. If it is, it is conclusive and forecloses further investigation. Applying that test to the present case, we do not think the judgment of the court of appeals in *Bailey v. Mosher, supra,* supports the plea of *res judicata.* It does not dispose of the action for deceit on its merits, but on the technical ground that, by the averment of mere conclusions of law, the plaintiff had committed himself to the theory that the action was of a different character, and precluded an examination of the merits of his action for deceit.

As to the other plaintiffs, it is insisted that they are concluded by the judgments of dismissal rendered in the respective cases by the federal court. It will be remembered that in all of those cases, save that brought by Bailey, the dismissal was on the motion of the plaintiffs, and before the trial of any issue of law or fact. A dismissal, under such circumstances, does not operate as an estoppel, and is no bar to another action. Section 430 of the code seems to embody the prevailing doctrine in regard to a voluntary dismissal, and provides, among other things, that an action may be dismissed by the plaintiff, before a final submission of the cause to the jury, without prejudice to a future action. See *Beals v. Western Union*

*Telegraph Co.,* 53 Neb. 601; *Bank of Maywood v. Estate of McAllister,* 56 Neb. 188; *Harrison v. Hartford Fire Ins. Co.,* 112 Ia. 77. That the costs had not been paid in the cases voluntarily dismissed does not estop the plaintiffs to prosecute these actions. So far as our practice is concerned, the most that can be said of the common law rule, making the payment of costs in the former action a prerequisite to the prosecution of another, is that it is one which the trial court, in the exercise of a sound discretion, may or may not apply. *Union P. R. Co. v. Mertes,* 35 Neb. 204. The record shows no abuse of discretion in this instance.

It is next contended by the defendants that these cases were prosecuted on the theory that they were actions for misfeasance and mismanagement. The record does not sustain that contention. It is true there is a large amount of evidence in the record tending to establish misfeasance and mismanagement of the affairs of the bank by the defendants. But this evidence was not introduced for the purpose of proving such facts, but was, in most instances, inseparably connected with evidence tending to establish an action for deceit. That the court tried the cases as actions for deceit is clearly shown, we think, by an instruction following the statement of the issues, in which the jury were instructed that the burden of proof was on the plaintiffs to establish the allegations contained in their several petitions, closing with these words: "In other words, the burden is upon the plaintiffs severally to show that the defendants severally published, or caused to be published, or participated in the publication of, the statements of the condition of the Capital National Bank; * * * that the plaintiffs, each for himself, relied upon the truth of said statements; * * * that such statements were untrue."

It is earnestly contended by the defendants that the verdicts are not sustained by sufficient evidence. The evidence makes up three large volumes, and it is impossible to discuss it, save in the most general way, with-

out extending this opinion to undue length. It was incumbent on the plaintiffs to establish by a preponderance of the evidence: (1) That the defendants published the statements purporting to show the financial condition of the Capital National Bank or participated in the publication thereof; (2) That such statements were false; (3) That the plaintiffs severally relied upon such statements, and believed them to be true, and were thereby misled to their injury.

As to the first proposition, the evidence shows that none of the statements were actually made by all the defendants, but that each defendant participated in making some of them. It is urged on behalf of the defendant Thompson that he participated in making but one of them. That is a mistake. The evidence is conclusive that he signed and participated in making at least four of them; the first being that made and published December 28, 1886; the last that made and published July 9, 1891. The mistake arises, perhaps, from the construction which the defendants seem to place on the petitions. The petitions set out two of the statements at length, but it is also alleged that at divers other times and dates, between the 28th of December, 1886, and the 21st day of January, 1893, the defendants made and published other false and misleading reports purporting to show the condition of the bank, which were relied upon by the plaintiffs. The defendants appear to take the position that plaintiffs should be restricted to the two reports set out at length. We do not think so. The allegations of the petitions are sufficiently broad to admit proof of any and all statements made on and between the dates just mentioned. If definiteness and certainty required all such statements to be set out at length, the remedy was by motion.

As to the proposition that the statements were false, the evidence involves a maze of figures and computations covering a large portion of the bill of exceptions. The defendants contend, among other things, that the only discrepancies shown by this evidence are discrepancies be-

tween the balance book of the bank and the statements, and that such discrepancies are due to the fact that the comptroller of the currency, in pursuance of his authority under the federal banking law, required a different classification of the items in such statements than that under which they were classified on the books of the bank; that the relation between the totals was not thereby disturbed; consequently, such discrepancies are immaterial. The contention is not borne out by the record. The evidence not only tends to show discrepancies between the statements and the books of the bank, but also between such statements and the actual condition of the bank when the statements were respectively made, and that such discrepancies materially disturbed the relation between the totals of the assets and liabilities of the bank, and made its condition appear better than what it actually was. In short, there is ample evidence to sustain a finding that the bank was insolvent before and during the period covered by the transactions of the plaintiffs with it; that, had the statements been made in accordance with the facts, they would have shown, notwithstanding the classification required by the comptroller of the currency, the true condition of the bank, or at least sufficient to put prospective customers upon inquiry; but, instead, they exaggerated the assets, depreciated the liabilities, and were so framed as to conceal the actual condition of the bank and convey the impression that it was not only solvent, but prosperous. In the face of these facts, no manipulation of figures or refinement of argument can make it appear that the discrepancies are immaterial, or that there is a lack of proof that the statements were false. We do not wish to be understood to say that all of the defendants knew that such statements were false. We are satisfied that such is not the case. But, as was said in *Gerner v. Mosher,* 58 Neb. 135, it was their duty to know whether the statements made by them were true, and the fact that they made and published them, without knowledge of their falsity, is no defense.

As to the proposition that the plaintiffs relied upon such statements and believed them to be true, and were thereby misled to their injury, we consider it sufficiently established by the evidence. The plaintiff Bailey testified that he had had some money to invest, and read the published statements of the different banks including those of the Capital National, in order to keep himself informed of their condition.

The following is a portion of his testimony on this point: "Q. How did you come to go to the Capital National Bank? A. I went on purpose to see what they would pay on the money. And I thought it was just as good as the First National. Q. What information did you have as to the condition of the Capital National Bank? A. As soon as I went in they handed me a card, and the directors and stockholders of the bank were on that card. And I took the papers several years previous. Q. What papers? A. The Semiweekly Journal, I believe, and the Call. Q. What did you see? A. I saw the bank was in good circumstances, as I supposed, the way the amount of assets read in the published statements. Q. Well, what did you read in those papers—published statements? A. Yes, in the published statements in the paper. Q. Of what bank? A. The Capital National Bank of Lincoln, Nebraska. Q. State when it was, with reference to the time. A. I suppose ever since the bank started, for I read the papers every day, and took particular notice. I had some money to loan out, and I took a little notice where I thought was the best place to put it. Q. And what reliance did you make, if any, upon these statements? A. Well, that was all the reliance I had was what I could get information in the papers in regard to the standing of the bank. Q. State what information, if any, you had, other than what was disclosed in the statements that were published. A. That was all the information I had. Q. You may state where you got your information as to the condition of this bank. A. I got it from the published statements. Q. And from any other source? A. No, sir, I had no other source

to get it from.    Q. State what effect those published state-
ments had upon your transacting business at the Capital
National Bank, if any.    A. Why, that is all the effect 1
had to go by was the published statement, supposing it was
to be true and correct.    Q. Did you believe it to be true?
A. I believed it to be true or I wouldn't have put my money
there, I would have kept it where it was.    Q. Now, you
may state if you knew at any time, or had any means of
knowing, that the Capital National Bank    *    *    *    was
not financially in the condition as represented in the condi-
tion as represented by its statements.    A. I had no means
of knowing.    Q. Well, did you have any knowledge?    A. I
had no knowledge.    Q. State what belief, if any, you put
in those statements prior to the time you deposited your
money in the bank.    A. I believed the statements to be
true, or I never would have put my money in the bank.
That is sure."

Cross-examination—"Q. And there was no bank in Lin-
coln, or in the state that you knew of, that stood higher
in the general estimation than it?    A. Not in my own mind
according to their statement.    I don't think there was any
in Lincoln, anyway."

His evidence, fairly construed, sufficiently shows that he
relied upon the false statements, believed them to be true,
and, consequently, that the bank was safe; that, acting in
that belief and influenced by it, he transferred his business
to such bank.    It is true, his evidence shows that he was
influenced somewhat by the higher rate of interest this
bank was paying.    But it is well settled that, where a
false statement is relied upon and is a material induce-
ment, it is immaterial that other causes contributed to
influence the conduct of the injured party.    *Runge v.
Brown*, 23 Neb. 817; *Foley v. Holtry*, 43 Neb. 133; *Olcott v.
Bolton*, 50 Neb. 779; *Sioux Nat. Bank. v. Norfolk State
Bank*, 56 Fed. 139.    The evidence adduced on behalf of the
other plaintiffs on this point is stronger than that adduced
by Bailey, and is sufficient, we think, in each case to sustain
a finding that the plaintiffs relied upon the statements, be-

lieved them to be true, and were misled thereby to their injury.

We have gone over the evidence in this case with some care, fully alive to the liability of the jurors to draw wrong inferences in cases of this character, owing to the lack of time and facilities to consider and weigh the mass of evidence introduced, and are thoroughly satisfied that every fact essential to a recovery in these cases is sufficiently sustained by the evidence. We have also gone over the several errors assigned, and have examined them in the light of exhaustive briefs and luminous oral arguments of the learned gentlemen representing the respective parties, but have found no reversible error.

It is therefore recommended that the several judgments be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the said judgments and each of them are

AFFIRMED.