**HUGHES v. REED et al.**

**No. 291.**

Circuit Court of Appeals, Tenth Circuit.

Jan. 8, 1931

E. B. Stroud, Jr., of Dallas, Tex., and Robert B. Keenan, of Tulsa, Okl. (Locke, Locke, Stroud & Randolph, of Dallas, Tex., on the brief), for appellant.

A. J. Biddison and Joseph L. Hull, both of Tulsa, Okl. (Harry Campbell, Valjean Biddison, John H. Cantrell, Preston C. West, N. A. Gibson, A. A. Davidson, and West, Gibson, Sherman, Davidson & Hull, all of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

### McDERMOTT, Circuit Judge.

This is an action in equity by the receiver of the First National Bank of Sapulpa against its former directors to recover losses alleged to have been incurred by the bank. Two general claims are made: First, that the directors knowingly and intentionally permitted the officers of the bank to make loans in excess of 10 per cent. of the unimpaired capital and surplus of the bank, prohibited by section 5200 of the Revised Statutes as amended (12 USCA § 84). Second, that the defendants failed faithfully and diligently to discharge their duties as directors, in the making of improvident loans, in permitting overdrafts, in withdrawing their own depos-

its, in failing to heed the warnings of the Comptroller, in failing actively to supervise and direct the bank's affairs, and in improper payment of dividends.

The amended bill, upon which the case was tried, is most general in its terms. It charges that loans were made to named borrowers in excess of the legal limit. But it does not allege when the excess loans were made, or when the loss occurred; instead, exhibits are attached which disclose when the notes were made. But the evidence discloses that the notes were renewals; the bill therefore does not truthfully allege when the loss occurred. Mohrenstecher v. Westervelt (C. C. A. 8) 87 F. 157. Neither does it allege the amount of the loss in any instance. Although the amended bill was not filed until March 22, 1926, and the receiver had been in charge for nearly three years, the plaintiff alleges in each instance that the amount of the loss is unknown. No proof was offered to support many of the charges of the bill. On the other hand, proof was offered and received of the total losses of the bank. It is quite apparent that the theory of the pleader was to charge defendants with everything, with the hope that the proof might develop something. It should be remembered that, while the form of this action is equitable, the relief sought is the recovery of money; the liability is legal, and the wrong complained of is personal and not vicarious; before there can be a recovery against any director, a violation of his statutory or common-law duty must be proven as to him; and the amount of the loss occasioned by his dereliction must be proven. The pleading should allege the wrong, when it was committed, and the loss occasioned thereby, as far as it is possible so to do. The pleader has shot at the covey with a shotgun; he should aim at a particular bird with a rifle. While the pleading is open to criticism, and the motions requiring better particulars should have been sustained in part, we are not prepared to say, as did the master, that it failed to state a cause of action.

Answers were filed, denying generally and specifically, and setting up the statutes of limitation of Oklahoma. The cause was referred to a special master "for the purpose of taking the testimony * * * with directions to report to this court, his findings of fact and conclusions of law." Although the court had settled the pleadings, the master "disposed of the questions of law raised by the respective answers." The findings of fact of the master consist of an affirmative

finding as to three formal matters, and twenty-five negative findings, that is, a finding as to each paragraph of the bill, that the allegations of that paragraph were not proven. The result was that exceptions were filed to all but three of the twenty-five findings, and the entire case was before the trial court, without the assistance which normally comes from a reference, to wit, a narrowing of controversies over facts to those facts in actual dispute. The conclusion of law was that the bill be dismissed as to each defendant. The trial court overruled the exceptions, approved the report, and dismissed the bill. The receiver appeals.

■ The record is not in compliance with equity rule 75 (28 USCA § 723) which provides in part:

"The evidence to be included in the record shall not be set forth in full, but shall be stated in simple and condensed form, all parts not essential to the decision of the questions presented by the appeal being omitted and the testimony of witnesses being stated only in narrative form, save that if either party desires it, and the court or judge so directs, any part of the testimony shall be reproduced in the exact words of the witness."

The rule is applicable to "the evidence," and is not confined to "the testimony of witnesses." An effort has been made to avoid printing the testimony of witnesses in question and answer form, although parts of that are a mere combination of question and answer, rather than a narration. But no effort has been made to "state in simple and condensed form" the 340 exhibits introduced. These exhibits occupy 479 pages of the printed record, of which 296 pages are in fine type. More than 200 pages are devoted to printing in full all reports of the national bank examiner from 1919 on, repeating in each case the printed instructions on the blank. Each report occupies 15 pages of fine print; perhaps one or two lines in each are material. The minutes of every directors' meeting since 1918 are printed in full, including resolutions authorizing small donations to the Red Cross, proxies for meetings of the Federal Reserve Bank, and other details of no possible relevance here. Deposit tickets, notes, and checks are printed in full. To require these hundreds of pages to be set and printed is a sheer waste of money; and the result is a record which this court could only master at the expense of other work of the circuit. It is a clear violation of a rule in force since 1913, and to which the courts have called attention repeatedly. If it were

not for the fact that reversible error appears from a superficial examination, the appellant would be required to comply with the rules.

■■ The trial court held that the two-year statute of limitations of Oklahoma was applicable. Strangely enough, this voluminous record does not disclose the one controlling fact, when the suit was brought. The appellant's brief advises us that it was originally filed on May 21, 1925, and the appellees do not deny it. Ordinarily, the doctrine of laches, and not limitations, is applicable in equity. But actions against directors or officers of a bank to recover for derelictions of duty may be brought either at law or, if necessary to avoid multiplicity of suits or if accounting or discovery is necessary, in equity. Bates v. Dresser, 251 U. S. 524, 40 S. Ct. 247, 64 L. Ed. 388; Bowerman v. Hamner, 250 U. S. 504, 39 S. Ct. 549, 63 L. Ed. 1113; Boyd v. Schneider (C. C. A. 7) 131 F. 223; Cooper v. Hill (C. C. A. 8) 94 F. 582; Cockrill v. Cooper (C. C. A. 8) 86 F. 7; Hayden v. Thompson (C. C. A. 8) 71 F. 60; Emerson v. Gaither, 103 Md. 564, 64 A. 26, 7 Ann. Cas. 1114, 8 L. R. A. (N. S.) 738, and note; 3 R. C. L. 467.

■ Where the jurisdiction of law and equity are concurrent, the applicable statute of limitations of the state governs, and not the equitable doctrine of laches. Curtis v. Connly, 257 U. S. 260, 42 S. Ct. 100, 66 L. Ed. 222 (equitable action against bank directors); McDonald v. Thompson, 184 U. S. 71, 22 S. Ct. 297, 46 L. Ed. 437 (equitable action against stockholders of national bank); Baker v. Cummings, 169 U. S. 189, 206, 18 S. Ct. 367, 42 L. Ed. 711; Metropolitan Bank v. St. Louis Dispatch Company, 149 U. S. 436, 448, 13 S. Ct. 944, 37 L. Ed. 799; Kelly v. Dolan (C. C. A. 3) 233 F. 635; Hale v. Coffin (C. C. A. 1) 120 F. 470, 474; Anderson v. Anderson (D. C. Ga.) 23 F.(2d) 331; Id. (C. C. A. 5) 28 F.(2d) 1007, certiorari denied Sill v. Pennington, 279 U. S. 845, 49 S. Ct. 265, 73 L. Ed. 990; Emerson v. Gaither, 103 Md. 564, 64 A. 26, 8 L. R. A. (N. S.) 738, 7 Ann. Cas. 1114; Insurance Company v. Brown, 11 Mich. 265; Wallace v. Lincoln Sav. Bank, 89 Tenn. 630, 15 S. W. 448, 24 Am. St. Rep. 625; 3 R. C. L. 469. There is some confusion in the authorities upon the point, growing out of a failure to distinguish a purely equitable action against corporate officers, as to enforce a trust, and a legal action seeking money damages for a breach of statutory or common-law duty, brought in equity for convenience. It is only in the latter case that concurrent jurisdiction exists.

The Oklahoma statutes of limitation are:

"Second. Within three years: An action upon a contract express or implied, not in writing; an action upon a liability created by statute, other than a forfeiture or penalty.

"Third. Within two years: * * * an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud." C. O. S. 1921, § 185.

The appellant contends that the three-year statute, and the appellees the two-year statute, applies. The amended bill is double-barreled; it alleges in terms a statutory duty and a breach, and a common-law duty and a breach. It is settled that the specific duties placed upon bank directors by the statute do not "relieve such directors from the common-law duty to be honest and diligent, as is shown by the oath which they are required to take 'to diligently and honestly administer the affairs of such association' as well as not 'to knowingly violate or willingly permit to be violated any of the provisions of this title'—the National Bank Act." Bowerman v. Hamner, 250 U. S. 504, 510, 39 S. Ct. 549, 551, 63 L. Ed. 1113.

Section 5200 of the Revised Statutes (12 USCA § 84) provides that the total obligations to a national bank, of any person, partnership, association, or corporation, shall at no time exceed 10 per cent. of the unimpaired capital and surplus of the bank. Section 5239 (12 USCA § 93) provides that—

"If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. * * * And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."

Is this a "liability created by statute?" On the face of it, it appears to be. The duty (to abstain from loans in excess of 10 per cent.) is fixed by statute; the statute likewise fixes the remedy—the forfeiture of the franchise, and personal liability of the directors, provided the directors "knowingly" violate or permit a violation, and "participate in or assent to" such violation. Appellees argue that a duty exists at common law to abstain from lending any considerable part of the capital and surplus to one concern, to avoid putting too many of the bank's eggs in one basket; that the statute merely measures or defines that duty, and does not create it. The common-law obligation is to be honest and diligent; a loan of 20 per cent. of the capital and surplus to a great railroad might be consistent with honesty and fidelity; a loan of one per cent. to another customer might not be. Aside from statute, there is no prohibition of loans in any fixed percentage. The prohibition is purely statutory; the breach thereof is therefore a "liability created by statute."

And to this conclusion are the authorities. Referring to this particular statutory prohibition of excess loans, the Supreme Court, in Bowerman v. Hamner, supra, said, at page 511 of 250 U. S., 39 S. Ct. 549, 551:

"The National Bank Act imposes various specific duties on directors, other than those imposed by the common law, and it is obviously possible that a director may neglect one or more of the former, and not any of the latter, or vice versa. * * * While the statute furnishes the exclusive rule for determining whether its provisions have been violated or not, this does not prevent the application of the common-law rule for measuring violations of common-law duties."

In Yates v. Jones National Bank, 206 U. S. 158, 27 S. Ct. 638, 644, 51 L. Ed. 1002, it appeared that the state courts of Nebraska had taken jurisdiction of a common-law action of deceit against directors of a national bank, and a judgment (74 Neb. 734, 105 N. W. 287) was rendered against them because of false reports to the Comptroller. There was no proof that the directors knew the reports were false, as prescribed by section 5239 (12 USCA § 93). The Supreme Court reversed the judgment, and, after reviewing the various statutory prohibitions on national banks, including the excess loan section here involved, said:

"It thus becomes obvious that the national bank act imposes upon directors duties which would not rest upon them at common law. * * *"

The court then held that section 5239 afforded the "exclusive rule" by which to measure the liability of directors for violations "of a duty expressly imposed upon them by a provision of the act." Later on the court

said, as to these duties that were "solely enjoined by the statute" that:

" * * * It is self-evident that the rule expressed by the statute is exclusive, because of the elementary principles that where a statute creates a duty and prescribes a penalty for nonperformance, the rule prescribed in the statute is the exclusive test of liability."

In Frame v. Ashley, 59 Kan. 477, 53 P. 474, the question was the nature of the liability of an officer of a bank who received deposits while the bank was insolvent. Under statutes of limitation which are identical with Oklahoma, the Kansas court held that the action was "upon a liability created by statute."

In Stephens v. Overstolz (C. C. Mo.) 43 F. 465, Mr. Justice Miller, sitting on circuit with two associate judges, held that the liability imposed by section 5239 was remedial and not penal; that the action was one that survived the death of the director, and among other things said:

"The statute declares the mode of proceeding, the liability of the wrong-doer, and the limit of his responsibility."

Aside from authority, it seems clear that the liability of a director as to the manifold statutory prohibitions and mandates placed upon officers of a bank should be measured exactly by the statute. Responsible men might well hesitate to assume such positions if liability followed breaches of duties by other officers; if they accept, they have a right to assume that their liability is measured by their knowledge, unless they deliberately decline to know what reasonable investigation would have disclosed. Jones National Bank v. Yates, 240 U. S. 541, 36 S. Ct. 429, 60 L. Ed. 788; Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141. As was said by the Supreme Court in Yates v. Jones National Bank, supra:

"The frustration of the public policy embodied in the national bank system by the crippling of the usefulness of such institutions, which would result from holding that directors, in performing the duties imposed upon them by the national bank act, might be held liable civilly, not by the standard of conduct which the act provides for a violation of its express commands, but by another and different one, is apparent. Under such a conception it might well be that prudent and responsible persons would decline to assume the discharge of the duties imposed by the statute because of the hazard of an uncertain

pecuniary liability which the statute imposing the duty did not contemplate."

The authorities relied upon by appellees are not persuasive. Where a statute abolished the fellow-servant defense, an action against an employer for personal injuries is not upon a liability created by statute; neither is it akin to the case at bar. We conclude that an action against directors of a national bank, brought under section 5239 (12 USCA § 93), is an action upon a liability created by statute, and may be maintained if brought within the three years prescribed by the Oklahoma statute.

The trial court likewise held that the two-year statute applied to that part of the bill alleging a breach of nonstatutory obligations. Is it an action upon a "contract express or implied, not in writing," and barred in three years, or is it "an action for injury to the rights of another, not arising on contract," and barred in two years? Stated more accurately, the question presented to us is whether the facts alleged state a breach of an implied contract, for, if the facts disclose both a breach of an implied contract and a tort, the appellant may recover in debt or assumpsit, although the remedy in tort is barred by limitations. Cockrill v. Cooper (C. C. A. 8) 86 F. 7, 10, and authorities therein cited; 17 R. C. L. 733. Where doubt exists as to the nature of the action, courts lean toward the application of the longer period of limitations. Matthys v. Donelson, 179 Iowa, 1111, 160 N. W. 944; St. Louis, etc., R. Co. v. Sweet, 63 Ark. 563, 40 S. W. 463; Crum v. Johnson, 3 Neb. Unof. 826, 92 N. W. 1054; Alexander v. Overton, 22 Neb. 227, 34 N. W. 629; Adelbert College v. Toledo W. & W. Ry. Co., 13 Ohio Cir. Ct. R. 590; Multnomah County v. Kelly, 37 Or. 1, 60 P. 202.

While the amended bill does not clearly disclose the theory of the pleader, the facts alleged are sufficient to support an action upon the implied contract. The assumption of the duties of directorship in any corporation is an agreement honestly and diligently to direct the business of the corporation. The statute requires that each director of a national bank take an oath that he will, "so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate or willingly permit to be violated any of the provisions of this title." 12 USCA § 73. By the relationship, fortified by the oath, he agrees with the stockholders and creditors that he will honestly and diligently adminis-

ter the bank's affairs. The amended bill alleges facts which, if true, are a breach of that agreement. It has been expressly held that the liability of a director is ex contractu. Cooper v. Hill (C. C. A. 8) 94 F. 582, 587; Boyd v. Schneider (C. C. A. 7) 131 F. 223; Curtis v. Phelps (D. C. N. Y.) 208 F. 577; Bates v. Dresser (D. C. Mass.) 229 F. 772; Benton v. Deininger (D. C. N. Y.) 21 F.(2d) 659; Orth v. Mehlhouse (D. C. Minn.) 36 F.(2d) 367. It has been uniformly held that the action survives the death of the director, without reference to state statutes of survival, and that interest is recoverable. Bates v. Dresser, 251 U. S. 524, 40 S. Ct. 247, 64 L. Ed. 388, and cases cited. While the measure of the obligation is that of ordinary care and prudence, the obligation arises from the implied agreement, and not alone by failure to exercise such care. We conclude that the three-year statute of limitations is applicable to both grounds of liability alleged.

■ The statute of limitations commenced to run when the bank parted with the money loaned. Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 86, 40 S. Ct. 82, 64 L. Ed. 141. The appellant seeks to recover, notwithstanding, for losses occurring to the bank prior to May 21, 1922, on the theory that the appellees concealed their derelictions; that all of the directors were involved, and that they could not be expected to cause the bank to sue themselves. Appellant therefore contends that the statute did not commence to run until the receiver was appointed in 1923, and that therefore none of the claims is barred. The authorities are not in entire accord upon the question. See note appended to Ventress v. Wallace, 111 Miss. 357, 71 So. 636, L. R. A. (N. S.) 1917A, p. 980. The late Judge Sanborn dealt exhaustively with the point in Cooper v. Hill (C. C. A. 8) 94 F. 582. There the officers and directors expended the bank's money in operating a mine, contrary to law. But the books of the bank disclosed the transactions, and there were no overt acts of concealment, nor any charge of a conspiracy of silence among the directors. The plaintiff claimed that the statute did not run until the derelictions were in fact discovered. But the court held that the officers were not trustees of an express trust, and might invoke the statute of limitations; that, since the derelictions were not accompanied by intentional misrepresentations, and their acts were not concealed from the stockholders, creditors, or employees, the statute was a bar as to all expenditures prior

to the statutory period. In Curtis v. Connly, 257 U. S. 260, 42 S. Ct. 100, 101, 66 L. Ed. 222, the action was in equity by a receiver of a national bank against its directors for losses sustained by illegal dividends and improvident loans. The state statute had run. The receiver contended that the case was within an exception in the state statute to the effect that, where the existence of the cause of action was concealed, by actual misrepresentation of the wrongdoer, time did not begin to run until actual discovery. The Supreme Court denied the claim, saying in part:

"The bank of course must be charged with knowledge of what appeared upon its books. It owned them; its stockholders had a right to inspect them. Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433. Hence it would seem, as suggested by the District Judge, that so far as concerns investments of a kind that national banks are not allowed to make, the bank was chargeable with knowledge from the beginning and can found no claim upon them now. * * * Three new directors came upon the board before August 3, 1910. It is alleged unmistakably in the bill that all the directors were chargeable with notice and did in fact know that the dividends were paid out of assets and not earned and that the improper loans should be recalled. Even if otherwise the statute of limitations would not have run, which we do not imply, knowledge of the facts by the new directors was knowledge by the bank, and none the less that according to the bill they in their turn were unfaithful. It is not alleged that they conspired with the defendants whose case we are considering. They came to the board as the eyes of the bank. Any one of them having notice was bound to do what he could to avert or diminish the loss. Indeed the bill seeks to charge one of them for not having done his duty. Notice to an officer, in the line of his duty, was notice to the bank. A single director like a single stockholder could proceed in the courts. Joint Stock Discount Co. v. Brown, L. R. 8 Eq. 381, 403. * * * The statute of limitations must not be applied so narrowly that business men will be afraid to take directorships, and however this bill be read in its details it appears to us not to charge enough to deprive the appellees of the protection of the act."

Neither the pleading nor the proof brings this case within the exception. The record shows that, aside from two transactions in 1922 and 1923, the books disclosed every transaction complained of in the briefs. The

stockholders had access to them. Furthermore, the National Bank Examiners, the real "eyes of the bank," had access to the books, repeatedly examined them, and had actual knowledge of the things complained of. The Comptroller had ample power to compel restitution, resignation, or a receivership. The record is silent as to the coming in of new stockholders, any one of whom could have sued (equity rule No. 27 [28 USCA § 723]), but it affirmatively shows that one new director (the master found two) came on the board January 10, 1922, and another in January, 1923. Between January 10, 1922, and May 21, 1922, is a reasonable time for the discovery of past derelictions. This case therefore falls squarely under the doctrine of Curtis v. Connly, supra, and all losses occurring prior to May 21, 1922, are barred by the statute.

■■■■■ If this case had been tried in accordance with the equity rules, it would be possible for this court to correct the error and enter a decree accordingly. But it was not so tried. The master tried the case as if it were at law, with a jury present. He sustained objections to evidence offered, and there the matter ended as to oral testimony, although all of the exhibits excluded are in the record. In excluding evidence, he not only applied the wrong statute of limitations, but apparently proceeded on the theory that nothing that occurred prior to the statutory period was relevant. This is manifestly erroneous. While recovery cannot be had of excess loans or other derelictions occurring before the bar dropped, any evidence tending to prove a wrong within the statutory period is competent, no matter the date of the evidential transaction. In other words, the statute bars recovery, but does not bar evidence. It should take but few words to make clear the proposition that, if a loan was made in 1923, evidence is admissible that in 1921 the borrower reached his limit; or that a loan made in 1923 was improvidently made because of facts occurring in 1921 of which the directors were aware. Again the master declined to hear evidence that proceeds of loans made to A were credited to B, and in other ways circumscribed the appellant in his effort to prove excess loans. Conceding that proof of the single circumstance is not sufficient to prove the loan to have been in fact made to B, yet it is a circumstance which is admissible in evidence. In the same way, that corporations are affiliated may be a circumstance, which with other proof will identify the actual borrower. On the other hand, the appellant, during the trial, apparently misconceived the statute prohibiting excess loans. The statute prohibits such loans to any person, and if an excess loan is in fact made to B, it does not avail that it is represented by notes signed by B's wife or his corporation. But the statute does not prohibit 10 per cent. loans to different persons or different corporations, if they be in fact separate loans, notwithstanding the borrowers may be related or affiliated. It may not be good business, or even a violation of the common-law duty, to lend too much money to persons or businesses which are affiliated but separate, but it does not fall within the statutory ban. But the proof that the loans are in fact excess loans to one borrower often must be found in circumstances, and latitude must be allowed in adducing such proof. Corsicana Nat. Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141. A great many other rulings excluding evidence are complained of, but, in view of what is to be said, need not be noticed.

■■■■■ In the trial of this case, the master overlooked equity rule No. 46 (28 USCA § 723) which governs the trial of all cases in equity. The old practice in equity was to take the proof, as a rule, by depositions. The evidence offered was thus in the record, and, if the appellate court believed evidence was material, a decree could be entered or directed and a new trial avoided, even though the trial court or the master had ruled it inadmissible. Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521; Kansas Loan & Trust Co. v. Electric Ry., Light & Power Co. (C. C. Mo.) 108 F. 702. The new equity rules changed the prevailing practice by providing that testimony should, as a rule, be taken in open court, thus saving the expense of depositions, but preserved the benefits of incorporation in the record of all evidence offered, by rule 46 (28 USCA § 723), which provides:

"In all trials in equity the testimony of witnesses shall be taken orally in open court, except as otherwise provided by statute or these rules. The court shall pass upon the admissibility of all evidence offered as in actions at law. When evidence is offered and excluded, and the party against whom the ruling is made excepts thereto at the time, the court shall take and report so much thereof, or make such a statement respecting it, as will clearly show the character of the evidence, the form in which it was offered, the objection made, the ruling, and the exception. If the appellate court shall be of opinion that the evidence should have been admitted, it shall not reverse the decree unless it be clearly of opinion that material preju-

dice will result from an affirmance, in which event it shall direct such further steps as justice may require."

■■■ Not only did the trial court and the master fail to take and report such excluded evidence (except the exhibits), or make any summary thereof, but the master erroneously refused on application to permit the question of admissibility to be certified to the court. Appellees contend that appellant forfeited his right to review by making no offers of proof. Offers of proof are primarily implements of courts of law, where juries try the facts, and all the authorities cited by appellees are law cases. The method of preserving the evidence in courts of equity is covered by the rule quoted. The rule in the trial of all equity matters, and particularly before a master, is to hear the evidence, or to make a statement thereof, subject to the two exceptions stated by Judge Sanborn in Dowagiac Mfg. Co. v. Lochren (C. C. A. 8) 143 F. 211, 214:

"To this general rule there are two exceptions. They are that it is the duty of the court or chancellor eliciting the evidence to consider and determine the claim of privilege of a witness or other party and to refuse to compel him to produce evidence in violation of it, and that, if it clearly and affirmatively appears that the evidence sought cannot possibly be competent, material, or relevant, and that it would be an abuse of the process of the court to compel its production, it may refuse to do so."

■■■ The appellees contend that the record discloses no actionable wrong on their part. But, aside from the appellee Stone, we have no means of knowing what the evidence offered but excluded would have developed. The appellees, by repeated and unfounded objections, succeeded in leaving a record which is not a record of proof. In the ordinary equity case, relief would be denied on appeal, if the record disclosed no liability. But here appellant was not at fault; the testimony was offered; appellees objected; and the master not only declined to receive it subject to the objection, but declined on seasonable application to permit the question of admissibility to be certified to the trial court. We are unwilling to enter any decree upon conjecture as to what the proof might have shown. Except as to appellee Stone, the cause must therefore be remanded for a new trial, a result which all equity practice is designed to prevent.

■■■ As to Stone, however, it appears that he severed his original connection with the board in 1919, and no claim is or can be made of any wrong prior to that. He next came on the board in January, 1923. The bank closed June 23, 1923. During that period he was active and diligent in undertaking to save the bank; although he did not attend the formal board meetings, he attended many conferences of the officers and the bank examiner, notwithstanding he was not a resident of Sapulpa. Chief Examiner Roberts, in a letter of May 25, 1923, speaks of Stone in a commendatory way and of his active assistance in raising an assessment. During the brief tenure of Stone, we can find no evidence of any losses to the bank, unless it be one transaction with the Central National Bank of Tulsa, and from the record it is not clear that any money was paid out by the bank on that transaction during these months; however that may be, the books did not disclose such transaction, and there is no proof, nor, as we read the record, any substantial effort at proof, opposing Stone's vigorous and convincing denial of any knowledge thereof. The record is barren of any knowledge by Stone of any unlawful act or of any failure to do his full duty as a director. Even as to Stone, the record is not as satisfactory as we should like to have it owing to the master's refusal to hear the evidence of McGee as to the knowledge of the directors generally; but, on the whole, we conclude that it is unfair to Stone, a responsible business man who came onto the board after the damage was done, and who spent his time in co-operating with the Comptroller in trying to avert the disaster, to put him to the expense of another trial.

The decree is affirmed as to A. H. Stone, with costs; it is reversed as to the other appellees, and remanded for a new trial; the bill of complaint should be amended setting out what dereliction of duty is charged as to each appellee, and the loss to the bank occasioned thereby, and the amount thereof, and when the loss was suffered. The cost of printing the record and one-eighth of the other costs are taxed to appellant; the balance taxed to appellees other than Stone.

Affirmed as to A. H. Stone.

Reversed and remanded as to other appellees.