F. L. McKENZIE, Appellant,

v.

The STATE of Texas, Appellee.

No. 42319.

Court of Criminal Appeals of Texas.

Dec. 3, 1969.

Rehearing Denied March 4, 1970.

Jake C. Cook, Fort Worth (court appointed on appeal only), for appellant.

Frank Coffey, Dist. Atty., John Brady, Rufus Adcock, Ronald W. Quillin, John Howze and Truman Power, Asst. Dist. Attys., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

BELCHER, Judge.

The conviction is for murder; the punishment, death.

The appellant, in his first ground of error, complains that the trial court erred in not granting his oral motion to quash the indictment on the ground that it does not sufficiently allege the elements of the offense of murder by arson. The formal parts having been omitted, the indictment reads as follows:

"One F. L. McKenzie, hereinafter styled Defendant, in the County of Tarrant

and State aforesaid, on or about the 5th day of May, in the year of our Lord One Thousand Nine Hundred Sixty Eight did then and there voluntarily and with malice aforethought kill W. C. Davis, Jr. by unlawfully and willfully setting fire to and burning the house of James A. Hayes there situate, thereby killing the said W. C. Davis, Jr."

■ The sufficiency of an indictment is measured by whether it sufficiently apprises the defendant of the offense with which he is charged in that it apprises him of what he must be prepared to meet, and whether it provides a sufficient shield for the plea of prior conviction or prior acquittal in the event of another prosecution against him for a similar offense. Cameron v. Hauck, 383 F.2d 966 (5th Cir. 1967). The state is not required to plead its evidence. 4 Branch's Penal Code, Sec. 2185 and cases cited. The indictment sufficiently apprised appellant of the act he is charged with committing and the offense of murder with which he is charged. Willson's Tex.Crim.Forms Anno., 7th Ed., Sec. 1803.

The appellant's first ground of error is overruled.

It is contended that the trial court erred in denying appellant's motions for change of venue and continuance.

■ These motions are in one instrument which is signed by the appellant and his counsel and sworn to only by his counsel. Art. 31.03, Vernon's Ann.C.C.P., requires that a motion for change of venue be supported by the affidavits of the defendant and at least two credible persons, residents of the county where the prosecution is instituted.

Evidence was offered in support of the motion for change of venue.

The trial court in view of the evidence offered, which has been examined, did not abuse its discretion in refusing the motion for change of venue.

There is no showing that the motion for continuance was ever considered or acted upon by the trial court.

The second ground of error is overruled.

Error is urged on the ground that the trial court proceeded to trial in Cause No. 75,744 (the instant case) instead of No. 76,440.

■ It is undisputed that both cases grew out of a single act of arson which caused the deaths of eight persons. From the record, there appears no prejudice in first trying Cause No. 75,744. Further, the record fails to show any objection to the order of trial. The third ground of error is overruled.

It is contended that the trial court erred in permitting the selection of a portion of the trial jury when one of appellant's attorneys was not present in court.

■ Two attorneys were retained to represent appellant. The court, at the commencement of the jury selection, gave the names of the two attorneys representing the appellant to the jury and told them that one would be there later. Two members of the trial jury were selected during the temporary absence of the attorney. The trial court did not err in proceeding with the trial in the absence of one of appellant's attorneys.

It is contended that the trial court erred in depriving the appellant of his right to be tried by an impartial and constitutionally selected jury.

Appellant takes the position in his brief that his trial counsel did not object to any of the 18 challenges for cause which were made by the state because of conscientious scruples during the examination of the sixty-four prospective jurors, and did not question them as to whether they could conceivably vote for the death penalty in some cases where the facts warranted such penalty, and never used the guidelines suggested by the trial court.

Before the beginning of the voir dire examination, the trial court informed trial counsel as follows:

"Gentlemen, in selecting jurors in this case we are going to be governed entirely, as far as the death penalty is concerned, by the law as set out in the Witherspoon case and the other cases in the Criminal Court of Appeals that have been decided since that date."

The court further informed counsel of the guidelines and definitions that would be considered when an objection was made that a prospective juror had conscientious scruples against the imposition of the death penalty. He also instructed counsel that, "The defendant's counsel, if he wishes, will be given an opportunity to cross-examine each prospective juror on these particular points." After inquiry by the court, there were no objections to the manner and method outlined for the voir dire examination. In his brief, the appellant states that the court gave excellent guidelines for the voir dire examination of prospective jurors.

In view of the gravity of this cause, an independent examination has been made of all the voir dire examinations of the prospective jurors at the trial.

A total of 64 prospective jurors were examined before 12 were chosen to serve as the trial jury.

■ According to the appellant's brief, 18 prospective jurors were challenged for cause by the state and excused by the court for having conscientious scruples against the imposition of the death penalty. This court's examination reveals that 17 were so excused and the other juror was excused for health reasons. At the conclusion of the individual examination of each of the 18 jurors, the court at times asked if the appellant had any objections to the juror being excused, and whether the inquiry was made or not the appellant announced that he had no objection in all except three. The appellant exercised 15

peremptory challenges and the state made 8 peremptory challenges. Three were challenged for cause by the appellant and excused. Eight were excused by the court and by agreement of counsel.

It is evident from the examination of this record that when the court at the outset informed counsel of the guidelines, definitions, manner and methods of conducting the voir dire of the prospective jurors that both parties concentrated their selection process in accordance therewith by developing and weighing the responses of the jurors for the purpose of acceptance or rejection. In numerous instances when the state challenged for cause, the court inquired of the appellant if he had any objection. There were no restrictions or limitations at any time pertaining to the examination, acceptance or rejection of any prospective juror. While the evidence supports the conclusion that each of the 17 had conscientious scruples against the death penalty, it does not reveal that there was any plan, pattern, scheme, or premature exclusion because of such scruples.

It is concluded from the independent examination of the voir dire of the prospective jurors as shown by the record that the appellant was not deprived of his right to a trial by an impartial and constitutionally selected jury.

■ The sixth ground of error is that: "The trial court erred in not granting appellant's lawyer more than 15 challenges for cause."

This matter arose as follows:

"Mr. Winder: Your Honor we have one more juror to pick, of course, and we have completely ran out of scratches or challenges. I wonder if we could impose on the Court to have a few more?

"The Court: On what grounds?"

The record reveals that the appellant did not respond to the court's inquiry. The next three prospective jurors were ex-

cused for the reason that they could not impose the death penalty. Without any examination of two, the appellant announced that he had no objection to them being excused and the third was excused without examination or complaint by the appellant. After extended interrogation, the twelfth juror was accepted by the appellant without complaint or any request for an additional challenge. The sixth ground of error is overruled.

The appellant contends that the trial court erred in finding that appellant's confession was voluntarily made and in admitting it into evidence.

■ Appellant also urges error in the admission of his confession made after he was indicted and was without the assistance of counsel and prior to the appointment of counsel for him.

The evidence reveals that the appellant was arrested on May 5, 1968, by the police in Juarez, Mexico. At 10:30 a. m., May 9, 1968, the appellant was turned over to the El Paso Police who turned him over to the sheriff of Tarrant County.

The appellant filed a motion to suppress his confessions. It alleged that the first purported confession dated May 9, 1968, and taken before Justice of the Peace Snooks in El Paso was not admissible because it recited that a crime was committed on May 5, 1958, which was a date ten years prior to the offense charged. The motion further alleged that the second purported confession taken before R. J. Adcock, (Assistant District Attorney of Tarrant County) does not show any date and under what circumstances said confession is alleged to have been signed.

At the hearing on the motion to suppress in the absence of the jury on October 17, 1968, the state announced that it would only offer in evidence the confession made by the appellant to R. J. Adcock, Assistant District Attorney.

The warning given appellant by Magistrate Snooks on May 9, 1968, in his office in El Paso was in accordance with Art. 15.17, V.A.C.C.P., and that warning is contained in the record.

The record further shows that the appellant gave the first confession to Magistrate Snooks following the above warning, but it was never offered in evidence by the state.

During the direct examination of Adcock on the warning given the appellant by him at the time he took the confession, the following occurred:

"Mr. Morris (Appellant's Attorney) Your Honor, we are not objecting at this time, and that is not the gist of our motion.

"We are stating that on account of the Statute the Statute says that on the confession, time, place, and date of the taking must be on the confession, and it's not on this confession.

"Mr. Brady: If Counsel will bear with us, we're approaching that very rapidly.

"The Court: All right."

The further testimony of the witness Adcock reveals the warning given to the appellant previous to the making of the confession to him. Adcock also testified that:

"I asked him (appellant) further had he already been warned by a Judge previously to my interview and been apprised of the situation. He told me he had, and he understood it at that time.

"BY MR. BRADY:

"Q Were you making reference to Peace Justice Danny J. Snooks?

"A Yes, sir."

The witness Adcock further testified that after timely and adequate warning was given, the appellant made, read, corrected, and then voluntarily signed the confession in his presence on May 11, 1968, which was

then witnessed by Barton Boling and Lloyd C. Peterson.

No objection was made to the admission in evidence of the certificate of warning given by Magistrate Snooks.

The appellant objected to the admission in evidence of the confession given Adcock for the reason that it did not have the time, place, and date on the first page; that Adcock states that he did not give the warning twice whereas there is a warning on the second page of the confession; and that the first page is signed Freddie L. McKenzie and the second page is signed Freddie Lee McKenzie.

Immediately below the warning at the top of the second page of the confession there appears the notation "Page Two," and at the bottom of said page the time, place, and date is shown.

On the trial of guilt or innocence, the following evidence was adduced before the jury.

Officer Hijar of the El Paso Police Department testified that the appellant was turned over to him through the immigration authorities by the Juarez Police at 10:30 a. m., May 9, 1968; that he immediately took the appellant before Justice of the Peace Snooks where he heard Magistrate Snooks at 11:20 a. m., May 9, 1968, warn the appellant in accordance with the warning contained in the instrument heretofore set out and designated "Certificate of Magistrate" which certificate Magistrate Snooks then signed and he (Hijar) signed as a witness. When the certificate was offered in evidence, the appellant announced that he had "No objection," and it was admitted in evidence.

In the absence of the jury, the state announced it would offer the confession of the appellant made to Assistant District Attorney Adcock. Upon inquiry by the court, the appellant stated that he was objecting to the confession on the ground that the time, place, and date were not shown on the first page and the further ground that it was not voluntarily made.

When the appellant was called to testify, the following occurred:

"Mr. Morris: Your Honor, we want it in the record that we are offering the Defendant as a witness solely as to the involuntariness of the confession.

"The Court: All right.

"Mr. Morris: We are not offering him as to any other part of the trial.

"The Court: All right."

In the absence of the jury, the appellant testified that he was placed in jail in Juarez for stealing a ring where he remained three or four days in a dirty and filthy jail with very little food; that on his return to El Paso he was given a warning before a magistrate who told him he was charged with murder; that he did not ask for an attorney at that time; that he signed an instrument showing that he had been warned of his rights; that he asked for an attorney after he was taken to the captain's office, but his request was refused. The appellant denied making the corrections on the confession, and on cross-examination denied signing it. He further stated that when Adcock began questioning him he asked for counsel, but his request was refused; that he repeated his request for counsel and also asked to make a telephone call which was denied; that Adcock started to give him a warning, but never completed it; that Adcock never read the statement to him and that he never read it.

In rebuttal, Rufus Adcock, the Assistant District Attorney who took the confession, testified that the appellant never complained of being mistreated or coerced; that he never requested counsel or asked to make a telephone call. Adcock further testified that he warned the appellant in accordance with the statutes as shown by the confession, and that it was freely and voluntarily made and signed by the appellant. The testimony of Officer Hijar corroborates that of Adcock.

At the conclusion of the hearing in the absence of the jury on the voluntary na-

ture of the confession, the court entered his order stating his findings which was filed, but not exhibited to the jury. Omitting the formal parts, the court's order was:

"On this, the 17th day of October 1968, the State, during its testimony in chief, requested that the jury be retired and advised the Court that it was its intention to offer in evidence the defendant's confession. Whereupon the Court granted a full and fair hearing out of the presence of the jury on the issue of the admissibility of the confession.

"The Court, from all the evidence at such hearing, is of the opinion and finds that such confession was voluntarily made and executed by the defendant after having been taken before Judge Danny J. Snooks in the City of El Paso, El Paso County, Texas on the 9th day of May, 1968, who gave him the statutory warnings as provided by Article 15.17 Code of Criminal Procedure.

"That thereafter on the 11th day of May, 1968, the defendant was duly warned by R. J. Adcock that he had a right to have a lawyer present to advise him prior to any questioning and during any questioning, and that if he was unable to hire a lawyer, he had a right to have a lawyer appointed to counsel with him prior to and during any questioning and that he had a right to remain silent and not to make any statement at all, and any statement he made could and might be used in evidence against him at his trial, that if he chose to answer questions, he might stop answering them at any time, that it was after having been given such warning by the said R. J. Adcock that the defendant knowingly and voluntarily waived all of such rights and made the statement offered in evidence.

"And the Court further finds and is satisfied from all the evidence that the defendant was not induced or caused by any person to give or make such confession by threats, persuasion, compulsion, intimidations, violence, promises, unlawful detention or anything else other than the free and voluntary act of the defendant and that such confession was typed in response to voluntary statements made by the defendant in his presence, and thereafter, the defendant well understood the contents thereof and willingly and voluntarily signed his name thereto.

"The Court further finds that the defendant's statement shows the date, time and place that the defendant received the statutory warnings and made such statement.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the defendant's objections to the admission of such confession into evidence is hereby overruled."

The record shows that the indictment in this cause was returned on May 10, 1968, and the confession of the appellant was made to R. J. Adcock on May 11, 1968.

When the confession of the appellant made to and taken by R. J. Adcock on May 11, 1968, was introduced in evidence, the following occurred:

"The Court: Just a minute. Are you going to offer it (confession) in evidence?

"Mr. Brady: I thought it was in evidence. We will offer it in evidence at this time.

"The Court: All right. Do you have anything to say?

"Mr. Morris: Yes, sir, we would like to, for the record, we would like to make our objection.

"The statement that he is reading from does not have the time, place and date on the first page of the confession or statement.

"The Court: All right. Thank you. I will overrule your objection.

"Mr. Morris: Note our exception.

"The Court: In State's Exhibit Number 11 (confession) is admitted in evidence."

In charging the jury on the guilt or innocence stage, the court did not charge on the voluntary nature of the confession or on any other issue pertaining to it.

At the close of the evidence on the first stage, the court inquired:

"The Court: Gentlemen, you have a copy of the Court's Charge. Have you had an opportunity to examine it?

"Mr. Winder (Appellant's Counsel): Yes, sir.

"The Court: Do you have any objections?

"Mr. Winder: No objections."

The contentions that the confession was not admissible in evidence on the ground that it was involuntarily made after he had been indicted and was without the assistance of counsel are overruled.

Error is urged on the ground that the trial court failed to read the court's charge to the jury.

▆▆▆▆ In considering a similar contention in Quinn v. State, 164 Tex.Cr.R. 125, 297 S.W.2d 157, this Court said:

"The question of whether or not the failure or refusal of the judge to read the charge is in itself ground for reversal would appear to be settled by Art. 666, C.C.P. which provides, in part: 'Whenever it appears by the record in any criminal action upon appeal that any requirement of the eight preceding articles has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.'

"Articles 658 and 660, C.C.P. contain the only provisions which require that the charge be in writing and be read to the jury, and each of said articles is within 'the eight preceding articles' which are governed by Art. 666, V.A.C.C.P.

"In the absence of any showing in the record that the court's failure to read the charge was calculated to injure the rights of appellant or that appellant has not received a fair and impartial trial, the error does not call for reversal." (Arts. 658, 660 and 666, V.A.C.C.P., respectively are now Arts. 36.14, 36.16 and 36.19, V.A.C.C.P.)

The disposition in Quinn is applicable and controlling in this case.

It is observed that the court's charge was certified and filed with the clerk of the court on October 17, 1968; and the verdict of the jury was returned and filed that day. The appellant made no objection to the state's attorney's opening argument to the jury that he wanted to go over the court's charge "which has just been read to you." The judgment recites that "the jury, after hearing the evidence and being duly charged by the court, retired to consider its verdict." In approving the record on appeal, the trial judge found that no objections thereto had been filed and presented to the court.

The foregoing ground of error is overruled.

The ninth ground is that, "The trial court erred in permitting the counsel for the state to make highly inflammatory and prejudicial argument to the jury both in the guilt or innocence hearing and in the punishment hearing."

This matter arose during the voir dire examination of a prospective juror when state's counsel stated to him that it is alleged that appellant started a fire which resulted in the deaths of eight persons. Upon objection, the state's counsel vol-

untarily said he would confine his questions to the deceased alleged in the indictment. The court took no action pertaining to the objection.

 The testimony of three witnesses reveals that other persons than the deceased alleged in the indictment died in the fire in question. No objection was made to the admission of such testimony. To the jury argument of state's counsel that eight persons perished in the fire, the appellant made no objection. To reserve his objection to the argument under the record, it was necessary for the appellant to timely and properly object thereto. Ground of error No. Nine is overruled.

Error is urged to the admission in evidence at the punishment stage of the trial of the appellant's two year probated sentence in 1965 for assault with intent to murder.

This evidence was admissible. Art. 37.07 (3a), V.A.C.C.P.

It is contended that the trial court erred in accepting the verdict of the jury assessing the punishment at death on the ground that it is cruel and unusual punishment.

The death penalty, as punishment for crime, is not in violation of the Constitution and laws of the United States and the State of Texas.

The twelfth ground of error is that the appellant did not have effective representation by counsel in his trial.

The appellant retained two practicing attorneys of the Fort Worth Bar who represented him at the trial in Fort Worth. From the record and the test for effective representation by retained counsel, we are unable to conclude that the trial was a farce or a mockery of justice, or that counsels' conduct amounted to a breach of legal duty. This ground of error is overruled. Byrd v. State, Tex.Cr.App., 421 S.W.2d 915; Davis v. State, Tex.Cr.App.,

429 S.W.2d 895; Goodrum v. Beto, D.C., 296 F.Supp. 710; Alexander v. United States, 290 F.2d 252 (5th Cir.), cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89. The twelfth ground of error is overruled.

The judgment is affirmed.