Louis L. SEIFFERT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 45964.

Court of Criminal Appeals of Texas.

Nov. 14, 1973.

Rehearing Denied Nov. 21, 1973.

Marvin F. Foster, Jr., San Diego, for appellant.

Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

QUENTIN KEITH, Commissioner.

This appeal arises out of a conviction for making a bank loan in excess of twenty-five per cent of a state bank's capital and certified surplus in violation of Article 342–507, Vernon's Ann.Civ.St. Trial was before the jury on a plea of not guilty. The punishment was assessed by the jury at a fine of $4,000 and five years, probated.

The indictment, omitting the formal parts, reads:

"(O)n or about the 16th day of December, A.D. 1968 . . . The First State Bank, Aransas Pass, Texas, which bank was incorporated under the laws of the State of Texas, and was then and there doing business as a state bank in Aransas Pass, San Patricio County, Texas, did then and there permit Bacor, Inc., a corporation, to become indebted to said bank by making a loan to said Bacor, Inc., in the amount of $180,000.00, that at the time of the making of said loan the capital and certified surplus of said bank was $500,000.00, and that L. V. Elliott, who was then and there an officer of said bank, to-wit, President, and Louis L. Seiffert, Jr., who was then and there a Director and Chairman of the Board of Directors of said bank, acting together, did unlawfully, wilfully and knowingly participate in said act of such bank by approving said loan and causing same to be made at a time when they well knew that upon said loan being made said corporation would become indebted and liable to said bank in an amount in excess of twenty-five per cent of the capital and certified surplus of said bank. . . ."

W. L. Bates, a real estate salesman in Corpus Christi and President of Bacor, Inc., had been interested for some time in acquiring property on Mustang Island. He entered into a letter agreement with Mrs. Sam E. Wilson, Jr., on October 30, 1968, concerning an option to purchase some 7,000 acres on Mustang Island. This agreement provided that Bacor, Inc., would pay $20,000 upon acceptance of the letter agreement and an additional $180,000 on December 16, 1968, in return for an option to enter into a sales contract for the purchase of this property.

At the time Bacor, Inc. was incorporated, Bates owned all of the existing 1,000 shares of stock. He and the appellant discussed the purchase of this Mustang Island property. Bates agreed to issue an additional 1,000 shares of stock or one-half interest in Bacor, Inc. to the appellant and two corporations, which were owned by the appellant. According to the testimony of Bates, the appellant was to arrange for a loan from The First State Bank, Aransas Pass, Texas, where the appellant was Chairman of the Board of Directors, to Bacor, Inc.

A loan of $20,000 was made to W. L. Bates in September, 1968, but was subsequently transferred to Bacor, Inc. Bates testified that the appellant had arranged for another loan of $180,000 and that Bates was to go to the bank in Aransas Pass and get the money. Bates and his wife went to the bank on December 16, 1968, where they met with the president of the bank, L. V. Elliott. Elliott testified that the appellant had given him instructions on how to make this loan. Instead of one note for the entire amount, this transaction consisted of three separate unsecured notes. The first note showed that a loan for $105,000 was made to Bacor, Inc. This note was apparently incorrectly signed the first time, but was subsequently corrected to show that it was signed "Bacor, Inc. by W. L. Bates." A second note for $62,000 was signed "W. L. Bates." The third note was executed by Bates' son, Dan Bates, and was for $13,000.

On this same day, December 16, Bates deposited $62,000 from the proceeds of the note he personally signed into the account

of "W. L. Bates, Co., Special" in The First State Bank. Again, on the same day he wrote a $62,000 check payable to The First State Bank. This check was drawn on the same account into which he had just made the $62,000 deposit.

One cashier's check in the aggregate amount of the three loans ($180,000) was issued to Bacor, Inc., on December 16, by The First State Bank and delivered to Bates. Bates took this cashier's check to a bank in Corpus Christi on the same day. He had three cashier's checks issued with Bacor, Inc. as the remittitur. These three cashier's checks were payable as follows: Ada Rogers Wilson, $90,000; Sam Wilson, Trusts-Trust No. 1, $45,000; and Sam Wilson's Trusts-Trust No. 2, $45,000. This arrangement was in compliance with the agreement to purchase the option on the property.

In grounds of error one, five and seven, the appellant complains that the indictment was vague and indefinite and that there was a variance between the allegations in the indictment and the proof at the trial. Each of these points is based on appellant's contention that since the indictment alleged there was a single loan to Bacor, Inc., in the amount of $180,000 and the proof showed there were three separate loans, a fatal variance existed which rendered the evidence insufficient to support the verdict.

Article 342—507, supra, provides:

"No state bank shall permit any person or any corporation to become indebted or in any other way liable to it in an amount in excess of twenty-five per cent (25%) of its capital and certified surplus. The phrase 'indebted or in any other way liable' shall be construed to include liability as partner or otherwise. The above limitation shall not apply to the following classes of indebtedness or liability:

\* \* \* \* \* \*
(immaterial exceptions omitted)
\* \* \* \* \* \*

"Any officer, director or employee of a state bank who knowingly violates or participates in the violation of any provision of this Article shall upon conviction be fined not more than Five Thousand Dollars ($5,000) or confined in the State penitentiary not more than five (5) years, or both."

■ The indictment substantially followed the language of the statute and sufficiently apprised appellant of the offense with which he was charged. Art. 21.17, Vernon's Ann.C.C.P.; Bass v. State, 427 S.W.2d 624, 626 (Tex.Cr.App.1968); Alberts v. State, 458 S.W.2d 83, 84 (Tex.Cr. App.1970).

■ In considering the question of variance, we recognize the rule that variance between the allegations and the proof does not render an indictment fatally defective. But, "(t)he variance, if fatal, may render the evidence insufficient to sustain a conviction." Webster v. State, 455 S.W. 2d 264, 265 (Tex.Cr.App.1970). While the state is not required to plead its evidence, the allegations in the indictment must be sufficient to apprise the appellant of the act he is charged with committing. McKenzie v. State, 450 S.W.2d 341, 343 (Tex.Cr.App.1969).

■ The indictment charged that appellant violated the statute by permitting Bacor, Inc. to become indebted to the bank in the amount of $180,000—not that Bacor, Inc., W. L. Bates, and Dan Bates, acting collectively as agents for Bacor, became indebted to bank in that amount. Under the rule laid down in Nichols v. State, 136 Tex.Cr.R. 41, 123 S.W.2d 672, 673 (1939), "appellant was entitled to know the exact nature of the accusation against him so that he might know what the state would attempt to prove and what he would be required to meet upon the trial."

■ The State, being bound by the allegations in the indictment, was likewise bound to prove them beyond a reasonable

doubt. Butler v. State, 429 S.W.2d 497, 502 (Tex.Cr.App.1968).

Under this record, the question may be stated simply: Did the proof show that Bacor, Inc. became indebted to bank in the amount of $180,000 by proof of the making of the three notes set out above? No case precisely in point has been cited and our own independent research has not disclosed such authority. There is no question in our record but that Bacor, Inc. eventually received the proceeds of the three notes and used such proceeds for its own corporate purposes; but that is not the question presented for review.

The Supreme Court of Texas in Goldstein v. Union Nat. Bank, 109 Tex. 555, 213 S.W. 584 (1919), considered a somewhat similar situation. One Walker, a vice president and manager of the bank, was the controlling stockholder of a millinery company which was already indebted to bank to its maximum loan limit. The millinery company and Walker agreed with Goldstein that as need should arise Goldstein and Walker would execute notes to be discounted by bank and the proceeds made available to the millinery company. Thus, it was contended that the millinery company became indebted to bank in excess of the legal loan limit.

The bank contended that the transaction was in violation of the national banking laws and hence a fraud on the bank. The contention was overruled, the Court saying:

"To said claim of fraud the obvious answer is that said loan was not made to the millinery company. The note taken therefor was signed by Goldstein and Walker individually, and not by the millinery company, and that company never became liable thereon as an undisclosed principal, and thereby the antecedent indebtedness of the millinery company to the bank was not increased. Inasmuch as the transaction constituted no violation of the banking law, it was not, for that assigned reason, a fraud upon the bank." (213 S.W. at 587–588)

The foregoing quotation from Goldstein was repeated by the Court in State Nat. Bank of Marshall v. Tittle, 143 Tex. 235, 183 S.W.2d 720, 723 (1944), where the Court was considering an almost identical set of facts. The Court continued: "(T)he brick company never became liable on the note as an undisclosed principal, hence its indebtedness to petitioner (bank) was not thereby increased."

The Court said that Tittle's note was a valid and binding obligation to the bank and continued: "We see nothing in the record that would make the transaction illegal." Id. See also, "Annotation," 125 A.L.R. 1516, et seq. (1940).

W. L. Bates and Dan Bates were liable to bank upon their respective notes and it is immaterial what disposition was made of the proceeds thereof. Having made the loan to the individuals, bank could not hold Bacor, Inc. liable upon such obligations which it did not execute, assume or agree to pay. Bacor was, of course, liable upon the note for $105,000 which was signed on its behalf by W. L. Bates. However, its liability on the two notes signed by the individuals was governed by § 3.401(a), Uniform Commercial Code, V.T.C.A., which provides: "No person is liable on an instrument unless his signature appears thereon." This identical provision appeared in the Negotiable Instruments Act, Art. 5392, § 18, V.A.C.S., and it has been said it "is but a declaration of practically universal law." Farrier v. Hopkins, 131 Tex. 75, 112 S.W.2d 182, 184 (1938).

The statute does not prohibit twenty-five per cent loans to different corporations, if they be in fact separate loans, even though the borrowers may be related or affiliated. As was said in a civil case, Hughes v. Reed, 46 F.2d 435, 442 (10 Cir. 1931), construing the parallel federal statute (12 U.S.C.A. § 84):

"It may not be good business, or even a violation of the common-law duty, to

lend too much money to persons or businesses which are affiliated but separate, but it does not fall within the statutory ban."

So it is here. Bates and his son obtained funds from the bank upon their own obligations and were liable thereon, but the indebtedness of Bacor to bank was not thereby increased. Goldstein, supra; Tittle, supra.

However, the Court charged upon the law of agency in the language set out in the margin, although agency was not mentioned in the indictment.[1] It is clear under our record that appellant could be found guilty only under such theory since Bacor, Inc. was not indebted to bank on the $180,000 loan but only for $105,000, an amount within the loan limit of bank. The jury recognized the problem which we have been discussing, for during the course of their deliberations the foreman sent in a note reading: "The jury needs to know the law pertaining to legality of the three notes being considered as one loan." The trial judge responded: "The Court is unable [to] add anything to law given you in Paragraphs II and I of the Charge." Paragraph I of the charge submitted the offense as charged in the indictment while Paragraph II was the instruction on agency.

■ Under the circumstances, we are led, ineluctably, to the conclusion that there was a fatal variance between the allegata and the probata. Webster v. State, supra.

We have reviewed the other grounds of error and do not find reversible error

presented. For the error herein mentioned, the judgment of the trial court is now reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge (dissenting).

The majority states the question to be decided: "Did the proof show that Bacor, Inc. became indebted to bank in the amount of $180,000 by proof of the making of the three notes set out above?" The facts in the majority opinion will not be repeated here.

The pertinent part of Article 342–507, V.A.C.S., upon which the conviction is based, provides:

> "No state bank shall permit any person or any corporation to become indebted or in any other way liable to it in an amount in excess of twenty-five per cent (25%) of its capital and certified surplus. The phrase 'indebted or in any other way liable' shall be construed to include liability as partner or otherwise. The above limitation shall not apply to the following classes of indebtedness or liability:

> " . . .

> "Any officer, director or employee of a state bank who knowingly violates or participates in the violation of any provision of this Article shall upon conviction be fined not more than Five Thousand Dollars ($5,000) or confined in the State penitentiary not more than five (5) years, or both."

National banks are restricted by a statute similar to Article 342–507, supra. 12

---

1. "Now, therefore, if from the evidence you believe beyond a reasonable doubt that W. L. Bates and Dan Bates, at the time of the making of the $62,000.00 and $13,000.00 loans the evidence shows were respectively made to them by said bank, the said W. L. Bates and Dan Bates were agents of Bacor, Inc. and acting for such corporation with the intention of obtaining the proceeds of said loans for the benefit of such corporation, then it will be your duty, during your deliberations on the question

of whether and to what extent, if any, Bacor, Inc. became indebted to said bank, to treat such loans as being loans made to Bacor, Inc. to the same extent as if such loans had been made directly to Bacor, Inc.; but if from the evidence you do not so believe, or if you have a reasonable doubt thereof, it will be your duty, in considering such question, to refrain from treating such loans as being loans made to Bacor, Inc."

U.S.C.A., Section 84.[1] In Hughes v. Reed, 46 F.2d 435 (10th Cir. 1931), the court held:

"The statute [12 U.S.C.A., Sec. 84] prohibits such loans to any person, and if an excess loan is in fact made to B, it does not avail that it is represented by notes signed by B's wife or his corporation. But the statute does not prohibit 10 per cent. loans to different persons or different corporations, if they be in fact separate loans, notwithstanding the borrowers may be related or affiliated. It may not be good business, or even a violation of the common-law duty, to lend too much money to persons or businesses which are affiliated but separate, but it does not fall within the statutory ban. But the proof that the loans are in fact excess loans to one borrower often must be found in circumstances, and latitude must be allowed in adducing such proof. Corsicana National Bank v. Johnson, 251 U.S. 68, 40 S.Ct. 82, 64 L.Ed. 141."

And, in First National Bank of Lincolnwood v. Keller, 318 F.Supp. 339 (U.S.D.C. N.D.Ill.), the district court, citing Hughes, supra, held:

"However, it is established in the case law that if a loan, made in the name of an employee or shareholder of the corporation, is treated in substance as a loan to the corporation then it may be combined with other loans to the corporation."

By limiting the liability of any one borrower to an amount not in excess of 25% of the bank's capital and certified surplus, a bank will be protected from speculative loans, which could, upon a failure of the venture, endanger the bank's financial status. The uncontroverted testimony in this case was that the three separate notes were executed for only one purpose—to obtain $180,000 for Bacor, Inc. so it could purchase the option on the desired property. I construe Article 342–507, supra, to apply in this situation where an excessive loan was *in fact* made to one borrower. The evidence was sufficient to support a finding that a loan in excess of the legal limit was made under the statute.

Appellant further contends that the trial court erroneously attempted to cure this variance by charging on the law of agency. The charge to the jury reads, in part, as follows:

"Now, therefore, if from the evidence you believe beyond a reasonable doubt that . . . the said W. L. Bates and Dan Bates were agents of Bacor, Inc. and acting for such corporation with the intention of obtaining the proceeds of said loans for the benefit of such corporation, then it will be your duty, during your deliberations on the question of whether and to what extent, if any, Bacor, Inc. became indebted to said bank, to treat such loans as being made to Bacor, Inc. to the same extent as if such loans had been made directly to Bacor, Inc. . . . ."

Corporations can act only through their agents. 2 Tex.Jur.2d, Agency, Section 52, page 495; 14 Tex.Jur.2d, Corporations, Section 322, page 421. The testimony of W. L. Bates, as president and stockholder of Bacor, Inc., and Dan Bates, as a director of Bacor, Inc., reflected that they were in fact borrowing this money in order that Bacor, Inc. could purchase the desired options. I would, therefore, hold that the court's charge to the jury on the law of agency was proper.

In appellant's second ground of error, he complains that the State failed to prove that the appellant "caused" this loan to be made and that the court erred in its charge by not requiring the jury to make such a finding. The indictment charged that the appellant "did . . . knowingly partici-

1. 12 U.S.C.A., Section 84, creates no criminal liability for a violation of the statute; however, a violation can result in a forfeiture of the franchise. 12 U.S.C.A., Section 93.

pate in said act of such bank by *approving* said loan and *causing* same to be made . . . ." (Emphasis added). The appellant further alleges that proof of either allegation would have been sufficient; but, since the indictment charged both, the State was required to prove both.

Article 342–507, supra, provides for the punishment of "[a]ny officer, director or employee of a state bank who knowingly violates or participates in the violation of any provision of this Article. . . ." The indictment charged that the appellant "did unlawfully, wilfully and *knowingly participate* in said act of such bank by *approving* said loan and *causing* same to be made . . . ." (Emphasis added). The court's charge read: "[D]id then and there unlawfully, wilfully and *knowingly participate* in the making of said loan by *approving* same . . . ." (Emphasis added).

*Approving* the loan and *causing* the loan to be made are merely different means by which participation in the unlawful transaction can be shown. Steambarge v. State, 440 S.W.2d 68 (Tex.Cr.App.1969).

The very purpose of the statute was violated by subterfuge with a company in which appellant owned an interest. In reviewing the totality of the circumstances, the evidence is sufficient to support the conviction.

There is no Texas case directly in point. The reasoning in the federal cases cited above is sound and should be followed; otherwise the statute will have little or no effect.

For the above reasons, the judgment should be affirmed.

MORRISON, Judge (dissenting).

I cannot bring myself to agree that this Court should consider as authoritative the opinion by the Supreme Court of this State in Goldstein v. Union National Bank, *supra*. The opinion from which the majority

quotes was prepared by Judge William E. Hawkins, but voiced his opinion only. Judge Greenwood concurred on grounds other than the cited language. Chief Justice Nelson Phillips dissented. Since there is no precedent which I consider authoritative to the contrary, I agree with that portion of Judge Douglas' opinion in which he says:

"I construe Article 342–507, supra, to apply in this situation where an excessive loan was *in fact* made to one borrower."

Having reached this conclusion, I join in Judge Douglas' dissent.