Opinion issued March 17, 2005








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00123-CR




JOSEPH ANTHONY SAMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 962049




MEMORANDUM OPINION
          A jury indicted appellant, Joseph Anthony Sampson, guilty of aggravated
robbery. After having found true an enhancement paragraph alleging a prior felony,
the trial court assessed punishment at twenty years’ confinement. In this appeal,
Sampson contends that the trial court erred in (1) denying his motion for a directed
verdict, and (2) admitting witness testimony of extraneous acts. We affirm. 
Background
          Marvin Jacob Lamond stored his two-and-a-half-ton flatbed pickup truck at the
Rigginses’ family home, located at 1407 Paul Quinn Street in Houston, Texas. 
Sampson desired to rent Lamond’s truck, but after a disagreement, they cancelled the
proposed deal. Sampson testified that he owned the tires on Lamond’s truck, and
that, on February 8, 2003, he towed the truck to another location. 
          A neighbor, Michael Davis, saw Sampson, accompanied by two men, towing
the truck from the Rigginses’ driveway. Davis immediately called his cousin,
Annette Riggins, to alert her of the towing. Annette stated that no one had the
authority to tow the vehicle, and then called the Houston Police Department and
Lamond. Pursuant to Lamond’s request, Larry Davis, Michael’s brother, got into his
vehicle, drove around the neighboring streets, and found Lamond’s truck parked in
a nearby yard. Larry returned to Annette’s home and told the police officers that he
had located the truck. The police officer then went with Larry and Michael to retrieve
Lamond’s truck. Larry and Michael towed Lamond’s truck back to the Rigginses’
home. They pushed the truck into the back yard, closed the gate to the yard, wrapped
a chain around the gate, and secured the chain with a padlock. 
          Elijah Riggins, Annette’s brother, testified that he received a phone call on the
morning of February 9 alerting him that the gate to his family’s backyard had been
damaged. He went to his family’s house on Paul Quinn Street and saw the badly
damaged gate. It appeared that someone had backed a vehicle into the gate, trying to
break the lock. Elijah waited for Annette to return home, and called the police. The
police officer stated that there was little to be done, prepared a report, and left the
Rigginses’ property. Elijah got into his pickup truck, backed out of the driveway, and
noticed Sampson driving down Paul Quinn Street. Elijah tried to stop the police
officer to let him know that Sampson could be responsible for the gate damage, but
he was unsuccessful because Sampson blocked the road with his pickup truck. Elijah
pulled his vehicle over to the side of the street. Sampson then jumped out of his
pickup truck, ran up to Elijah’s vehicle, and began making threatening remarks. 
Sampson told Elijah that, if he failed to pay him $1700, he would kill him and his
mother. Elijah put his pickup truck in reverse, went around Sampson’s vehicle and
began driving toward his home. Elijah saw Sampson pass him, but later lost sight of
him. 
          Meanwhile, Annette noticed her brother and Sampson stopped on Paul Quinn
Street. Annette got into her vehicle and drove toward them. She testified that, when
she arrived, they were leaving, but she decided to follow her brother to make sure her
brother was “all right and Mr. Sampson didn’t jump out and attack him again.” 
Although she lost sight of her brother, she was able to follow Sampson. She testified
that she saw Sampson pull into a driveway, get out of his pickup truck, and enter a
small building. 
          Elijah then noticed his sister, Annette, traveling behind him. They both
stopped their vehicles, and he told her about his recent interaction with Sampson. 
Annette informed Elijah that she saw Sampson stop and enter a building and that he
might have a gun. Elijah and Annette decided to go to the police station. As Elijah
drove to the police station, he noticed Sampson coming out beside a building with a
gun in his hand. Sampson began firing shots at Elijah’s vehicle. The third shot hit
and went through Elijah’s truck, striking him in the leg. Annette also testified that
she saw Sampson firing his gun toward her brother’s truck and another family
member’s vehicle, then fire his gun toward her vehicle. Annette returned to the
family home to find Elijah and take him to the hospital. 
          During trial, Sampson testified that he towed the truck from the Rigginses’
driveway in an effort to retrieve his tires. He further admitted that he damaged the
Rigginses’ fence and gate on February 8, the day he towed the truck. Finally, he
stated that he shot at Elijah’s truck only after the Riggins family members began
shooting at him. 

Discussion
Directed Verdict
          In his first issue, Sampson contends that the trial court erred in denying his
motion for a directed verdict. Specifically, he claims that the State did not prove that
the offense occurred in Harris County, Texas, as alleged in the indictment. The State
responds that the evidence presented at trial supports the jury’s finding that the
offense occurred in Harris County. 
          We treat a challenge to the trial court’s denial of a motion for instructed verdict
as a challenge to the legal sufficiency of the evidence. See Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996). We review the legal sufficiency of the
evidence by viewing the evidence in the light most favorable to the verdict to
determine if any rational fact finder could have found the essential elements of the
offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim.
App. 2000). In a legal sufficiency review, we may not substitute our own judgment
for that of the fact finder. Id.
          Sampson maintains that the State failed to prove, beyond a reasonable doubt,
that venue was proper in Harris County. He cites Seiffert v. State to support his
position. 501 S.W.2d 124, 126-27 (Tex. Crim. App. 1973) (holding State must prove
allegations in indictment beyond reasonable doubt). First, we note that venue must
be proven only by a preponderance of evidence. Tex. Code Crim. Proc. Ann. art.
13.17 (Vernon 1977). Next, we must presume that venue was proved at trial unless
it was disputed in the trial court or the record affirmatively shows otherwise. Tex.
R. App. P. 44.2 (c)(1). 
          Here, Sampson filed a motion for directed verdict claiming that the State did
not prove venue. Neither the State nor Sampson, however, presented any evidence
that venue in Harris County is inappropriate. Sampson also neglects to acknowledge
the following testimony of Officer John Kuchta, of the Houston Police Department: 
State: Now, I want to draw your attention back to February 9, 2003. Do
you recall being dispatched to a home off of Paul Quinn?

          Kuchta: Yes, I do. 
* * * * * 
State: At some point, let me ask you this: The address, 1407 Paul Quinn,
is that located in Harris County, Texas?
 
Kuchta: Yes, it is. 
          State: Are you familiar with the area 6722 Arabella in West
Montgomery?
          Kuchta: Yes, I am. 
State: Is that also located in Harris County, Texas?
Kuchta: Yes, it is.
Sampson further testified that he fired shots at Elijah near the intersection of West
Montgomery and Arabella. Houston Police Officer Chandler testified that, around
5:30 p.m. on February 9, 2003, he picked up Sampson on the corner of West
Montgomery and Arabella, after he saw him waiving his arms, as if to get his
attention. We hold that this evidence is sufficient to prove venue in the county of
prosecution. See Creekmore v. State, 860 S.W.2d 880, 890 (Tex. App.—San Antonio
1993, pet. ref’d). We therefore conclude that the trial court did not err in denying
Sampson’s motion for a directed verdict. 
Inadmissible evidence
          In his second issue, Sampson asserts that the trial court erred in admitting the
testimony of Patricia Hall. Hall testified that, on the morning of the shooting,
Sampson stopped by her home and warned her that three people in her family were
going to die. Hall further testified that Sampson explained to her that he was angry
because Annette called the police after he attempted to remove his tires from
Lamond’s truck. 
          Sampson’s trial counsel objected to the testimony as “extraneous” and on
relevancy grounds. The State then argued to the trial judge that the statements are
admissible under Rule 404(b) because they demonstrate his intent and state of mind
on the morning of the shooting. Tex. R. Evid. 404(b). The trial court overruled
Sampson’s objections and allowed Hall to testify before the jury. 
          On appeal, Sampson contends that the statements he made to Hall cannot be
classified as “other crimes, wrongs or acts” under Rule 404(b). Tex. R. Evid. 404(b). 
In essence, Sampson maintains that his statements to Hall are not extraneous offenses,
and, consequently, that Hall’s testimony concerning Sampson’s statements are not
admissible under any rule 404(b) exception. Tex. R. Evid. 404(b).
          We review the trial court’s determination of admissibility under an abuse of 
discretion standard. Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App.
1990); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.] 2000,
pet. ref’d). As a general rule, to prevent an accused from being prosecuted for some
collateral crime or misconduct, the State may not introduce evidence of bad acts
similar to the offense charged, even if relevant. Rule 404(b) provides that evidence
of “other crimes, wrongs or acts” is not admissible to prove a defendant’s character
in order to show action in conformity therewith. Tex. R. Evid. 404(b). However,
such evidence may be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident. Tex.R. Evid. 404(b). 
          “To constitute an extraneous offense, the evidence must show a crime or bad
act, and that the defendant was connected to it.” Lockhart v. State, 847 S.W.2d 568,
573 (Tex. Crim. App. 1992). The evidence must include some sort of extraneous
conduct on behalf of the defendant which forms part of the alleged extraneous
offense. Moreno v. State, 858 S.W.2d 453, 463 (Tex. Crim. App. 1993); Harris v.
State, 738 S.W.2d 207, 224 (Tex. Crim. App. 1986) (op. on reh’g). If no conduct is
involved in combination with thoughts, statements concerning a defendant’s thoughts
of wrongdoing are merely inchoate thoughts. Moreno, 858 S.W.2d at 463 (rejecting
defendant’s claim that admission of statement in which he expressed plans to commit
murder and kidnapping implicated Rule 404(b), because such plans were mere
thoughts not connected with any conduct and thus not extraneous offenses). Here,
neither party disputes the fact that Sampson did not combine his statements with
conduct. Absent any actual conduct involved which alone or in combination with
such thoughts could constitute a bad act, wrong, or crime, a defendant’s comments
about a desire or intent to commit an offense do not constitute prior misconduct and
therefore do not implicate Rule 404(b). Tex. R. Evid. 404(b); see Moreno, 858
S.W.2d at 463. Sampson’s thoughts thus are not inadmissible under Rule 404(b). See
Massey v. State, 933 S.W.2d 141, 153-54 (Tex. Crim. App. 1996) (holding testimony
pertaining to thoughts, not conduct, did not implicate Rule 404(b)); see also Moreno,
858 S.W.2d at 463. Accordingly, the trial court did not err in admitting Hall’s
testimony.

Conclusion
          We conclude that the trial court (1) did not err in denying Sampson’s motion
for a directed verdict, and (2) did not abuse its discretion in allowing witness
testimony, because his statements were not extraneous offenses. We therefore affirm
the judgment of the trial court. 


                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).